376 A.2d 990

COMMONWEALTH of Pennsylvania

v.

**Leon YOUNG, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 14, 1976.

Decided Aug. 17, 1977.

Walder, Martin & Kresman, Marshall E. Kresman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Chief, Appeals Div., Maxine J. Stotland, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Leon Young, was tried by a judge, sitting with a jury, and found guilty of aggravated assault and battery, assault and battery with intent to murder and forcible entry.

Post-verdict motions were denied and appellant was sentenced to a term of imprisonment of one and one-half to three years for the aggravated assault and battery conviction, a concurrent three-to-six-year-term of imprisonment on the assault and battery with intent to murder conviction, and a suspended sentence on the forcible entry conviction. A direct appeal was taken to the Superior Court and on March 31, 1975, the Superior Court affirmed the judgments of sentence.

A petition for allowance of appeal was filed with this court and the petition was granted on July 7, 1975. The appeal was limited to the issue of " . . . whether the trial judge committed reversible error by instructing the jury that it could find the petitioner [appellant] criminally liable for the acts of his co-conspirators while failing to charge as to the elements of conspiracy."

The facts surrounding this appeal are as follows.[1] On August 22, 1972, appellant, Leon Young, accompanied by Leon Kelsey, Rickey Kelsey and David Warren, forcibly entered an apartment at 3616 Bouvier Street, Philadelphia, occupied by Ronald Williams. Leon Kelsey pointed a gun at Williams and questioned him regarding a stereo phonograph they believed he had stolen from one of the group. After a search of the apartment revealed nothing, appellant and his companions ordered Williams to a house on Thirteenth Street, where Williams had spent the day. En route to the Thirteenth Street apartment, the group saw a police car approaching them, at which time Rickey Kelsey handed a gun to appellant and David Warren, both of whom crossed the street. After the police car passed, Rickey Kelsey crossed the street, retrieved the gun, and the three rejoined Leon Kelsey and Ronald Williams and proceeded to Thirteenth Street. A search for the stereo in this apartment also proved fruitless, as did the questioning of the occupant concerning Williams' times of arrival and departure. The

---

1. This crime was committed prior to the effective date of the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973, 18 Pa.C.S.A. § 101, et seq.

five men left the house. Rickey Kelsey, separated from the group, crossed the street, leaving appellant, Leon Kelsey, David Warren and Ron Williams outside the Thirteenth Street apartment. Appellant and David Warren dropped to the ground and immediately a shot was fired that struck Williams in the back. Williams turned and saw Rickey Kelsey crossing the street with a gun in his hand. Williams then crawled under a nearby car and began yelling for help. Appellant and his companions fled the scene of the shooting.

The sole issue presented by the appeal is " . . . whether the trial judge committed reversible error by instructing the jury that it could find the petitioner [appellant] criminally liable for the acts of his co-conspirators while failing to charge as to the elements of conspiracy."

The Commonwealth admits that its case against appellant relied on a conspiracy theory, the members of the conspiracy being appellant, the two Kelsey brothers and Warren.

In *Commonwealth v. Shadron*, 471 Pa. 461, 370 A.2d 697 (1977), this court, in discussing the failure of the trial court to charge on the elements of an underlying felony when felony murder is one of the theories of the Commonwealth's case, stated:

" . . . For a verdict to be founded on felony murder, the felony allegedly involved must be identified and described by more than merely its name; there must be an understandable delineation of the elements of the offense."

This court in *Shadron, supra,* further stated:

"Support for this conclusion is to be found in our recent statement of the understanding which a defendant must be shown to possess of the elements of a crime with which he is charged before his plea of guilty may be accepted. *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). We there held that while the terms robbery or murder 'clearly connote some meaning to the layman, this meaning does not always embrace the basic legal elements of the crime.' 455 Pa. at 203, 316 A.2d at 80. No less than a defendant who seeks to enter a plea of guilty, a jury in

order to reach an intelligently based verdict of guilty must be informed of the basic elements of the crime or crimes involved."

See *Commonwealth v. Sutton,* 465 Pa. 335, 350 A.2d 793 (1976). (This court mandated that "when a guilty plea to a general charge of murder is factually based upon the felony-murder rule, the elements of the specific underlying felony or felonies must be included in [the] colloquy as required by Pa.R.Crim.P. 319(a) and *Commonwealth v. Ingram, supra,* so as to afford the defendant a clear understanding of the nature of the charges against him.")

■ We are of the opinion that where, as here, the Commonwealth seeks to impose criminal liability upon a defendant and the basis upon which such liability is predicated is his involvement in a conspiracy, the elements of the substantive offense of conspiracy must be explained to the jury.

■ The Commonwealth argues that the above issue was not properly preserved for appellate review. We do not agree. The record in the instant case reveals that the Commonwealth submitted the following point for charge:

"Number 7: 'Where the existence of a *conspiracy* has been established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy.

"Such responsibility extends even to a shooting which is a contingency of the natural and probable execution of the conspiracy, even though such shooting is not specifically contemplated by the conspirators." (Emphasis supplied.)

The court below accepted the above point for charge, at which time defense counsel stated:

"Defense Counsel: *Then I would also request that Your Honor then go into an explanation of conspiracy.* Because otherwise I feel that it would not have been properly explained to the jury.

"The Court: *I am not going to go through with the whole complicated explanation of the variations of conspiracies that do not apply in this case.*

"Defense Counsel: *No, I don't want that. I just want the Court to go through with an explanation of what it is alleged by the Commonwealth does apply.*

"District Attorney: I think that all Your Honor has to do is explain to the jury that under a conspiracy—you know, you can use this charge to explain the responsibility for other charges.

"The Court: I will accept No. 7 as stated.

"District Attorney: I think that all you have to do is explain to them that a conspiracy can be entered into by persons without the Commonwealth showing any express agreements, sir, in terms of words that were overheard by someone else, or in terms of bringing in a co-conspirator." (Emphasis supplied.)

Defense counsel requested "an explanation of conspiracy." The court below refused. We are of the opinion that the requested "explanation" was sufficient to preserve this issue for appellate review. See Pa.R.Crim.P. 1119(b) and *Commonwealth v. Williams*, 463 Pa. 370, 344 A.2d 877 (1975).

■ The Commonwealth next contends that in reading the charge as a whole, the court below adequately defined the elements of the offense of conspiracy. We do not agree.

The court below charged as follows:

"Where the existence of a conspiracy has been established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirators if such acts are done in pursuance of the common design or the purpose of the conspiracy. Such responsibility extends even to a shooting which is a contingency of the natural and probable execution of the conspiracy, even though such shooting is not specifically contemplated by the conspirators."

The above portion of the charge clearly established the liability of a co-conspirator once a conspiracy has been

proven. The charge, however, does not delineate the elements necessary to determine the existence of a conspiracy. As a finding of conspiracy was necessary to predicate liability for the crimes of aggravated assault and battery and assault and battery with intent to murder, the judgments of sentence for those charges must be reversed.

Judgment of sentence for the crime of forcible entry is affirmed. Judgments of sentence for the crimes of aggravated assault and battery and assault and battery with intent to murder are reversed and the case is remanded to the Court of Common Pleas of Philadelphia for a new trial.

JONES, former C. J., took no part in the consideration or decision of this case.

PACKEL, J., files a dissenting opinion.

PACKEL, Justice, dissenting.

I dissent because conspiracy was described to the jury in lay terms. In any event, aside from any question of conspiracy, criminal responsibility exists because the appellant and the three others had forcibly entered the apartment where the shooting took place.