393 A.2d 350

**COMMONWEALTH of Pennsylvania**

v.

**Carlos A. CARTAGENA, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Jan. 17, 1978.

Decided Oct. 5, 1978.

8

Lawrence Solomon, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, James Garrett, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Carlos A. Cartagena, was tried by a judge and jury and was convicted of voluntary manslaughter, possess-

ing instruments of crime, possessing a concealed weapon and possessing a prohibited offensive weapon. Post-verdict motions were denied and appellant was sentenced to three to ten years' imprisonment for the voluntary manslaughter conviction, with a concurrent one to two year term of imprisonment for the weapons convictions. This appeal followed.[1]

The facts are as follows. On May 30, 1975, Steven Brocco, the victim, and Thomas D'Orio left a party they had attended and were walking along 7th Street in Philadelphia. At 7th and Kimball Streets, the pair encountered appellant and his wife, who were walking in the opposite direction on 7th Street. Appellant and the victim bumped shoulders as they passed each other. The two began wrestling and they fell into a window at 1021 South 7th Street, which broke upon impact. During the fight appellant pulled a knife and stabbed Brocco twice in the chest, causing his death.

Appellant first argues that the evidence is insufficient to sustain his conviction for voluntary manslaughter. We do not agree.

In *Commonwealth v. Rose*, 463 Pa. 264, 267–68, 344 A.2d 824, 826 (1975), we stated:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. . . . Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. . . . The fact-finder is free to believe all, part, or none of the evidence." (Citations omitted.)

It is our task to review appellant's claim in light of this standard.

1. The voluntary manslaughter judgment of sentence is before us on direct appeal. The judgment of sentence for the weapons offense were appealed to the Superior Court, which certified the appeal to this court.

At trial, appellant admitted stabbing the victim, but claimed that he did so in self-defense. He claimed that he stabbed Brocco only after the victim began kicking him. A Commonwealth witness testified, however, that the pair were merely wrestling when appellant pulled the knife and stabbed Brocco.

■ Reading the evidence in the light most favorable to the Commonwealth, the evidence is sufficient to sustain appellant's conviction for voluntary manslaughter. See *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977); *Commonwealth v. Andrews*, 466 Pa. 418, 353 A.2d 424 (1976) and *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645 (1975).

Appellant next claims that he was improperly rearrested after the charges were dismissed at the original preliminary hearing. Appellant argues that after the dismissal of charges, he may not be rearrested until a petition is submitted to a judge who must approve the rearrest. Appellant's claim is meritless.

The facts are as follows. Appellant was arrested on May 31, 1975. A preliminary hearing was held in the Municipal Court of Philadelphia on June 5, 1975. The court took the matter under advisement and after hearing argument, found that a *prima facie* case had not been established. The court ordered appellant discharged on June 13, 1975.

The Commonwealth then drew up another more detailed criminal complaint and another arrest warrant. These documents were presented to a judge of the Court of Common Pleas of Philadelphia who signed the documents on June 16, 1975. Appellant was rearrested, and following a preliminary hearing before another judge of the Court of Common Pleas of Philadelphia, appellant was held for trial on June 27, 1975.

■ Appellant cites *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975), to support his proposition that the Commonwealth must petition the court before rearrest following the dismissal of charges at a preliminary

hearing. We believe, however, that appellant has misread *Hetherington.* In that case, the defendant was held over on a variety of charges at a preliminary hearing. He then filed a "motion to quash" as to those charges with a judge of the Court of Common Pleas, who granted the motion. The Commonwealth attempted to rearrest the defendant by filing a petition before another judge of the Court of Common Pleas. The second judge denied the petition without a hearing, believing *res judicata* precluded him from reversing another judge of the same court. This court affirmed, but only because the "motion to quash" was actually a *habeas corpus* action, which decision was appealable. We held that the Commonwealth's failure to appeal the first judge's order precluded our consideration of the merits. *Hetherington* thus does not require a petition to be filed to rearrest after dismissal of charges at a preliminary hearing.

We did, however, state in *Hetherington, supra,* 460 Pa. at 21–22, 331 A.2d at 208:

"In *Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa. 11, 15–16, 198 A.2d 565, 567 (1964), we described the function of a preliminary hearing under Pennsylvania law as:

'The primary reason for preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection. It is not a trial in any sense of the word. It does not purport or attempt to determine the guilt or innocence of the accused, nor is he required to speak, plead or offer testimony in defense.' (Citations omitted).

"*A finding by a committing magistrate that the Commonwealth has failed to establish a prima facie case is not a final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest. In McNair's Petition,* 324 Pa. 48, 54, 187 A. 498, 501 (1936), we observed:

'When the magistrate believes that probable cause to hold the defendant has not been proven, he may discharge him; . . . If the commonwealth deems itself aggrieved by his decision it may bring the matter again before any other officer empowered to hold preliminary hearings.' (Citations omitted).

"In *Riggins Case*, 435 Pa. 321, 254 A.2d 616 (1969), we reaffirmed the view set forth in *McNair's Petition*, supra, and held that *the principle applies also where the officer sitting as a committing magistrate is a judge of the Court of Common Pleas and the evidence presented at the second proceeding is identical to that offered in the first.* Thus, it has been firmly established under our law that a determination by a committing magistrate that a prima facie case has not been proven is interlocutory in nature and therefore not appealable. *Riggins Case*, supra." (Emphasis added).

There was no error in rearresting appellant after dismissal of the charges at the first preliminary hearing.

Appellant also claims that he is entitled to discharge because the Commonwealth failed to pay the costs of prosecution after dismissal of the first complaint. In his brief, appellant quotes:

"Rule 141(d), Pa.R.Crim.P. states in part:

'When a Defendant has been discharged as herein provided and is thereafter arrested or summoned before an issuing authority on the same cause without the payment of cost by the original affiant, an issuing authority shall, upon application of the Defendant and upon being satisfied that the subsequent proceeding is substantially on the same cause involved in the first action, by whatever name it may be called, discharge the Defendant.' "

■ Appellant, however, has omitted the two sentences preceding the above-quoted portion, which state:

"If a *prima facie* case of the defendant's guilt is not established at the preliminary hearing, and no application for continuance, supported by reasonable grounds, is made by an interested person, and no reason for a continuance

otherwise appears, the issuing authority shall discharge the defendant; *and if he finds that the prosecution was brought without probable cause, the issuing authority shall order affiant to pay the cost of the prosecution.* No further proceedings may be had before any issuing authority on the same cause until the affiant in the original proceeding has repaid the costs." Pa.R.Crim.P. 141(d). (Emphasis added).

In the instant case, the first prosecution was dismissed because of the failure to establish a *prima facie* case and not because of the lack of probable cause to institute the criminal proceedings. Appellant's argument is thus meritless.

Appellant next claims that his case was improperly submitted to the grand jury, thereby invalidating the instant indictments. The facts are as follows.

Appellant was held for court on June 27, 1975, when the district attorney notified all parties that:

"The defendant's case will be presented *not less than ten days from today's date* to the grand jury presently sitting, or the next grand jury. He has a right to challenge the array, of course, of that grand jury prior to the submission of these charges." (Emphasis added.)

The court then informed appellant that he could challenge the array of the grand jury and then mistakenly told appellant that "these charges will be presented within the next ten days to the grand jury that is then sitting."

Appellant on June 30, 1975, obtained a stay of all proceedings against him so that he could file a petition for a writ of habeas corpus. The stay remained in effect until July 10, 1975, when the petition for a writ of habeas corpus was denied. Appellant's case was submitted to the grand jury on July 15, 1975, eighteen days after appellant was held for court.

Appellant's argument is two-fold. He first argues that the court mistakenly told him his case would be submitted to the grand jury within ten days, and thus, he did not receive proper notice of his case's submission to the grand jury. At

the time this case was submitted, Pa.R.Crim.P. 203(c) provided: [2]

"(c) A bill of indictment shall not be submitted to a grand jury for action until 10 days after a defendant is held for court unless he consents to an earlier submission and the Commonwealth agrees thereto, or the court, for cause, permits an earlier submission."

While the trial court's statement was in error, we fail to see how appellant was in any way prejudiced. First, appellant was given proper notice by the district attorney. Second, and even more important, appellant, under the law in effect at the time, was not entitled to special notice because:

"In *Commonwealth v. Collemacine*, supra, the Supreme Court of Pennsylvania held that 'a defendant is entitled to notice of presentment of his case to the grand jury if the presentment is to a grand jury other than the next term after the defendant's preliminary hearing.' *Commonwealth v. Johnson*, 440 Pa. 342, 353, 269 A.2d 752, 758 (1970). The reason for not requiring notice if the defendant is being bound over to the next term is that it is general practice for committing magistrates and judges to

**2.** The Rule was amended, effective January 1, 1978, eliminating the ten day requirement and providing:

"(b) When a case is submitted to a grand jury without any notice to the defendant, or when a case is submitted to a grand jury other than the specific grand jury to which the defendant was advised his case would be submitted, the defendant may challenge the array or an individual juror on the grounds set forth in subparagraph (a); however, any such post-indictment challenge must be included in the omnibus pretrial motion, as provided by these rules.

"Comment: The purpose of paragraph (b) is to preserve the defendant's constitutional right to challenge either the array or an individual juror. Unlike prior law, cf. *Commonwealth v. Dessus*, 423 Pa. 177, 224 A.2d 188 (1966), and *Commonwealth v. Collemacine*, 429 Pa. 24, 239 A.2d 296 (1968), the defendant's right to challenge would be preserved when the defendant did not receive adequate preindictment notification of the submission of his case to a specific grand jury. *This will obviate challenges to indictments based solely on the lack of notification; the only valid challenge shall be based on the composition of the grand jury which returned the indictments.* See *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967)." (Emphasis added).

bind defendants over to the next term of grand jury. *Commonwealth v. Cardonick,* 448 Pa. 322, 292 A.2d 402 (1972); *Commonwealth v. Rosenfield,* 220 Pa.Super. 105, 283 A.2d 870 (1971), aff'd, 448 Pa. 531, 292 A.2d 323 (1972). Under such circumstances, the date of presentment is 'readily ascertainable.' *Commonwealth v. Sullivan,* 446 Pa. 419, 432, 286 A.2d 898, 902 (1971)."

"Under the circumstances, we hold that appellant was not entitled to notice that his case would be presented to the January Grand Jury. Appellant was represented by counsel who knew, or should have known, that appellant's case could not be presented to the December Grand Jury. Because appellant's case was submitted to the next term of grand jury, the first one possible, he was not entitled to be notified. *Commonwealth v. Johnson,* supra." *Commonwealth v. Lloyd,* 239 Pa.Super. 273, 275–76, 361 A.2d 430 (1976).

■ Here, the July date was the first possible, because Rule 203(c) required waiting until July for submission of the case to the grand jury because the case was held over on June 27. Since the case was submitted to the next grand jury, appellant was not entitled to special notice.

Appellant's second prong of this argument is that the indictments should have been quashed because of a violation of the ten-day requirement of Pa.R.Crim.P. 203(c). Appellant argues that since the stay of all proceedings was in effect from June 30 until July 10, this period must be excluded from the ten-day period in Rule 203(c). Appellant believes that only eight days elapsed between the time his case was held over until it was submitted to the grand jury. Appellant believes for this reason the indictments should be quashed. We do not agree.

■ Under the old Rule 203(c), a defendant *had* to challenge the array of a grand jury before the bill was submitted to the grand jury.[3] The ten-day period was necessary to give appellant a chance to prepare any necessary

**3.** For the present law, see footnote 2.

challenge. Appellant had eighteen days in which to challenge the grand jury's array and his claim is thus meritless.

Appellant next complains that he was not tried within the time mandated by Pa.R.Crim.P. in Rule 1100. We do not agree.

Pa.R.Crim.P. 1100(a)(2) provides:

"Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

Appellant believes that since he was arrested on May 31, 1975, with the complaint filed that day, and his trial was commenced on December 12, 1975, he was not tried within the required 180 days. Appellant thus believes he should be discharged. We disagree.

The facts are as follows. Appellant was arrested and charged on May 31, 1975. On June 13, 1975, however, the court dismissed all charges because at the preliminary hearing, a *prima facie* case had not been established. The next complaint, upon which this case was based, was filed on June 16, 1975. It is from this date that the time period must run, with the 180th day falling on December 15, 1975. As appellant's trial was commenced on December 12, 1975, we believe that trial was timely.

*Commonwealth v. Earp*, 476 Pa. 369, 382 A.2d 1215 (1978), is inapposite. There, the defendant was arrested and charged with murder, conspiracy and several lesser included offenses arising from the same criminal episode. At a preliminary hearing, the murder and conspiracy charges were discharged, but the defendant was continuously held on all other charges. This continuous confinement was the crucial factor in discharging the defendant, even though the murder and conspiracy charges were later refiled and the trial was commenced within 180 days of that date.

In the instant case, all charges against appellant were dismissed at the first preliminary hearing and appellant was discharged from custody. Even though based on the same

episode, the second criminal complaint of June 16 was the one which commenced this prosecution. As such, appellant's trial was commenced within 180 days and appellant's argument is meritless.

Appellant next complains that the trial court erred in allowing allegedly improper cross-examination. The facts are as follows. Appellant's wife, Lucy Cartagena, testified as a defense witness and admitted that appellant often carried a knife for protection. On cross-examination, the prosecutor twice asked Mrs. Cartagena if she knew it was against the law to carry a knife. Both times she answered that she knew it was unlawful. On both occasions, appellant objected but the objections were overruled.

■ It was the appellant who brought out the fact that he had carried a knife on prior occasions. Any cross-examination on this point was allowable. Appellant argues, however, that the court erred in allowing his wife to state that she knew it was illegal to carry a knife.

In *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673 (1973), we stated, quoting from *Commonwealth v. Phillips,* 183 Pa.Super. 377, 132 A.2d 733, 736 (1957):

> " 'Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. *A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.*' " (Emphasis added in *Goosby.*)

■ The jury was told that they were to apply the facts to the law as given by the trial court, and it was their function to determine whether appellant had violated the criminal laws. We do not believe the complained of exchange was of such a nature as to deprive appellant of a fair trial.

Appellant next argues that the trial court committed numerous errors in its charge to the jury. We shall review appellant's complaints *ad seriatim.*

Appellant argues that he is entitled to a new trial because the court, after telling the jury that the Commonwealth must prove beyond a reasonable doubt that the killing was not justified, charged as follows:

"On the other hand, if you find from the facts, that is, *if you are satisfied beyond a reasonable doubt from the facts the defendant did have such a feeling and acted to save his life, to protect himself against grievous bodily injury,* and if you also find from the evidence that that feeling was a reasonable one, then your verdict should be not guilty, because that is a killing which is justified, it would be self-defense." (Emphasis added.)

Appellant claims that the trial court impermissibly placed the burden of proof on appellant to prove the killing was justified. We believe, however, that this issue has not been preserved for appellate review.

At the end of the court's charge, the following exchange occurred:

"MR. SOLOMON [Defense Counsel]: There was one other thing. I think that when you—I have to find it.

(Brief pause)

"When you discussed self-defense, I don't think you made it clear the Commonwealth must prove beyond a reasonable doubt that each and every element of self-defense is not present; that's their burden.

"THE COURT: In other words, I used there the Commonwealth has the burden of disproving—

"MR. SOLOMON: You didn't say each element. They have the burden of disproving each element. In other words, if they find they proved one element strongly, they can't use the next element to make up for it, because they're lacking evidence. They have to prove each essential element beyond a reasonable doubt. And that, I think, really should be told to them, your Honor.

"THE COURT: I'll give you an exception.

"MR. SOLOMON: Your Honor, that, I'm sure, was not properly covered. I haven't said too much about it other-

wise, although I have exceptions, but that one I was very concerned about.

"I don't know how you feel about this one, 2A. [Defendant's Points for Charge]. . . .

\* \* \* \* \* \*

"THE COURT: The rest of it has been covered adequately until we come to—

"MR. SOLOMON: Well, 7, I think, involved my objection which you just denied and gave me an exception to, each and every element beyond a reasonable doubt.

"THE COURT: I said the Commonwealth must disprove any justification for the killing.

"MR. SOLOMON: Yes, but they must—

"THE COURT: And that means every element of justification.

"MR. SOLOMON: And that where one reasonably believes that he's acting under the self-defense section, as a reasonable person, an intentional killing is still justifiable.

"THE COURT: It's exactly what I told them.

"MR. SOLOMON: I have an exception?

"THE COURT: You have an exception."

██ Appellant's specific objection at trial centered on the court's failure to charge that the Commonwealth had to disprove each element of self-defense. This was the only objection of appellant regarding the burden of proof. Nowhere was the objection raised which appellant now makes. Pa.R.Crim.P. 1119(b) provides:

"No portions of the charge nor omissions therefrom may be assigned as error, unless *specific objections* are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury." (Emphasis added).

We believe the issue is not properly preserved for appellate review. See *Commonwealth v. Bailey,* 463 Pa. 354, 369, 344 A.2d 869 (1975).

██ Appellant next argues that the court erred by failing to charge the jury that the Commonwealth had to prove

each element of the crimes charged beyond a reasonable doubt. Appellant's contention is totally without merit. Our review of the charge reveals that the trial court repeatedly instructed the jury that the Commonwealth had the burden of proof beyond a reasonable doubt of all of the elements of the crimes charged. The charge also reveals that the court explained the elements of the crime charged.

Appellant next argues that the court failed to charge that the Commonwealth had the burden of disproving that the killing was done with justification. Again, however, the charge contained the following:

"Summarizing what I have just said, *because the Commonwealth has the burden of disproving the defense of justification, because the defendant has no burden at all,* you may find the defendant guilty of murder only if you are satisfied that he, the defendant, did not reasonably believe that the use of deadly force was then and there necessary to protect himself against death, or grievous bodily injury." (Emphasis added).

Appellant's claim is without merit.

Appellant next believes the court erred when charging the jury on voluntary manslaughter. The court charged:

"A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual who was killed. You must, therefore, consider whether the defendant in this case acted in a state of sudden and intense passion resulting from serious provocation. Passion includes any feeling such as anger, terror, rage or resentment. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person. The law says it is difficult to define what serious provocation is, but the law has said no mere words, or gestures, or accusations, *or even a slight assault, a trivial assault are sufficient* to constitute adequate legal provocation in law. In other words, *it has to be provocation of a more serious nature, certainly, than words or than conduct, like a slight*

*assault or trivial battery.* In order to lower a criminal homicide from murder to voluntary manslaughter, the provocation must be sufficient to call [sic] a reasonable person to actually fly into a sudden or intense passion, a loss of power to control one's emotions and action by the person who has lost such control before he is able to resume control of himself, before reason has resumed its sway. If he acts while he is under that passion, then the killing, if it is a criminal homicide, would be voluntary manslaughter." (Emphasis added).

■■■ Appellant claims that the court erred in refusing to define the terms assault and battery. We disagree.

In recent years, this court has required trial courts to adequately define the elements of crimes in certain instances. *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974), (we held that for a guilty plea colloquy to be valid, the accused must be told the elements of all the crimes to which he is pleading guilty.); *Commonwealth v. Shadron,* 471 Pa. 461, 370 A.2d 697 (1977), (we held it was error for a court to charge a jury on felony-murder without defining the underlying felonies); *Commonwealth v. Young,* 474 Pa. 96, 376 A.2d 990 (1977), (we found error where a trial court charged the jury that the defendant could be held liable for the acts of his co-conspirators while failing to define the elements of conspiracy). We believe, however, that none of these cases is persuasive in the context of appellant's present argument.

In all three of the aforementioned cases, the definitions of the crimes in question were crucial for the conviction of the defendants therein. In the instant case, however, the definitions of either assault or battery were peripheral issues at best. The central issue was whether appellant was adequately provoked so as to be enraged, thus lowering the degree of guilt to voluntary manslaughter. When the trial court used the terms in question, he was simply illustrating the fact that the provocation must be sufficient to provoke a reasonable man. See *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972). Appellant's claim is without merit.

██ Appellant next complains that the court erred in its use of the term "disproportionate force" when defining justification. However, since no objection was made at trial, this claim is waived. Pa.R.Crim.P. 1119(b).

Appellant next claims the court erred when charging the jury as follows:

"In this case there is evidence that the death was caused by a knife. As to this the law says that where anyone, *without sufficient cause or provocation,* unlawfully kills another by using a deadly weapon upon the vital part of his body, with a manifest intention to so use it, that is, not accidentally, an inference may be drawn, in the absence of qualifying circumstances, that the user of the deadly weapon intended the natural and probable consequence of his act, and intended to kill his victim.

"In other words, what is the natural and probable consequence of using a weapon like a knife upon the vital part of another person's body, like the chest or stomach? Normally the natural and probable consequence is the death of the person who has been so injured.

"So the law says that if someone does intentionally use such a weapon, *without any excuse or without any qualifying circumstances,* he intends to kill his victim. That is an inference you, the jury *may* draw from the facts, if you determine there are facts indicating there was the use of a deadly weapon upon the vital part of the victim's body. This inference is supported, under such circumstances, by the common knowledge that such use of a deadly weapon is likely to cause death." (Emphasis added).

██ Appellant does not question the correctness of the charge. Rather, appellant argues that the court failed to tell the jury that they did not have to draw the inference. Appellant also argues that the general proposition should have been qualified. We believe the emphasized portions of the charge show that appellant's contentions were covered, although not in the exact language requested by appellant. See *Commonwealth v. Bishop,* 472 Pa. 485, 372 A.2d 794 (1977).

In his last allegation of error concerning the trial court's charge, appellant complains of the court's definition of reasonable doubt. The court stated:

"What is a reasonable doubt?

"A reasonable doubt is a doubt that would restrain a reasonable careful and sensible person from acting upon a matter of importance in his own affairs. Let me repeat that. A reasonable doubt is a doubt that would restrain a reasonably careful and sensible person from acting upon a matter of importance in his own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to any of the elements of the crime. A reasonable doubt must be a real doubt. A reasonable doubt may not be an imagined doubt, nor may it be a doubt manufactured by any of you jurors for the purpose of carrying out an unpleasant duty."

Appellant believes the court should have charged as follows:

" 'Each and every essential element of the offense charged must be proven beyond a reasonable doubt. Although each essential element need not be proven so that it is an absolute certainty; it must be proven so that a reasonable person would be satisfied and not be in doubt about it.' It could be added 'any doubt must be a reasonable one.' "

As we stated in *Commonwealth v. McComb,* 462 Pa. 504, 509, 341 A.2d 496, 498 (1975):

". . . the trial court is not required to accept the language of the point submitted by counsel but rather is free to select its own form of expression. The only issue is whether the area is adequately, accurately and clearly presented to the jury for their consideration."

Further, the definition used by the trial court is one we have sanctioned time and again. *Commonwealth v. Donough,* 377 Pa. 46, 103 A.2d 694 (1954); *Commonwealth v. Burns,* 409 Pa. 619, 187 A.2d 552 (1963); and *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974). Appellant's claim is without merit.

Appellant next attacks the constitutionality of §§ 907 and 908 of the Crimes Code, alleging both are so vague as to render them unconstitutional. These sections provide:

"§ 907. Possessing instruments of crime

"(a) Criminal instruments generally.—A person commits a misdemeanor of the first degree if he possesses any instrument of crime *with intent to employ it criminally.*

"(b) Possession of weapon.—A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon *concealed upon his person with intent to employ it criminally.*

"(c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

" 'Instrument of crime.'

"(1) Anything specially made or specially adapted for criminal use; or

"(2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

" 'Weapon.' Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon." Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.P.S.A. § 907. (Emphasis added.)

"§ 908. Prohibited offensive weapons

"(a) Offense defined.—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

"(b) Exception.—It is a defense under this section for the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, or that he possessed it briefly in consequence of having found it or taken it from

an aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully.

"(c) Definition.—As used in this section 'offensive weapon' means any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, *dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise,* or other implement for the infliction of serious bodily injury which serves no common lawful purpose." Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.P.S.A. § 908. (Emphasis added.)

Appellant argues that § 907 is unconstitutional because it makes possession of an ordinary kitchen knife against the law. However, appellant misreads this section. Section 907 does not prohibit mere possession of a kitchen knife; rather, this section makes it unlawful to possess a kitchen knife when the possessor intends to use the knife criminally. Further, the same is true when the weapon is concealed. Because intent must be proven, § 907 is not vague and is thus constitutional.

Appellant makes the same argument about § 908; i. e., since the section makes possession of a kitchen knife unlawful, it must be unconstitutional. Appellant again has misread this section. Section 908 specifically defines what are prohibited offensive weapons. One such weapon is a "knife . . ., the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise . . . ." Section 908 does not define a simple kitchen knife as a prohibited offensive weapon. Appellant's argument is thus without merit.

Appellant finally challenges the sufficiency of the evidence for his weapons convictions. As previously stated, he was convicted of possessing an instrument of crime,

possessing a concealed weapon and possessing a prohibited offensive weapon.

The Crimes Code provides:

"A person commits a misdemeanor of the first degree if he possesses any instrument of crime with the intent to employ it criminally." 18 Pa.C.P.S.A. § 907(a).

Further, an instrument of crime is defined as:

"anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.P.S.A. § 907(c)(2).

Viewing the evidence in the light most favorable to the Commonwealth, it is clear that appellant possessed an instrument of crime with the requisite criminal intent.

The Crimes Code also provides:

"A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with the intent to employ it criminally." 18 Pa.C. P.S.A. § 907(b).

Again, since appellant had the knife concealed, the circumstantial evidence is sufficient to prove the requisite criminal intent.

■■■ Appellant finally alleges that the evidence was insufficient to sustain his conviction for possessing a prohibited offensive weapon. An offensive weapon is defined as:

". . . any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, *dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise,* or other implement for the infliction of serious bodily injury which serves no common lawful purpose." 18 Pa.C.P.S.A. § 908(c). (Emphasis added.)

As we pointed out in our discussion of the constitutionality of § 908, the above definition does not encompass a simple kitchen knife. The record is devoid of any proof that

appellant possessed any weapon defined in § 908. Appellant is thus correct that the evidence is insufficient to sustain a conviction under that section.

Judgment of sentence at No. 452 January Term, 1976 is affirmed. Judgment of sentence imposed at No. 496 January Term, 1976, is vacated and as to this offense the appellant is discharged.

EAGEN, C. J., and ROBERTS and NIX, JJ., concur in the result.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I must emphatically dissent. For at least two centuries, the law has required that the prosecution prove a citizen's guilt *beyond a reasonable doubt.* No such proof is present in this case. While walking along the street with his wife late at night, appellant was bumped by a *stranger* who approached from the opposite direction. Violent wrestling follows. What is a citizen to do? He knows the man with whom he is wrestling is accompanied by a male companion. He also knows his wife is present. Should he politely ask the stranger, "Is my life—or my wife's life—in danger?" Can any citizen be said to be acting unreasonably if he takes a weapon and strikes first in such a situation? This was not a bar room fight between people who knew each other. This incident took place between strangers, late at night, on an open street.

Of course, had there been evidence that appellant was the aggressor who started a fight even though he had the option of continuing along the sidewalk with his wife after bumping the victim, inferences would be warranted concerning his criminal intentions. The majority, however, points to no such evidence. The burden of proof is on the prosecution, and it failed to prove that appellant had any criminal intent—it proved only that appellant used a weapon to protect himself as any reasonable person might do under the circumstances. Appellant's conviction should be reversed

and appellant discharged on the voluntary manslaughter charge as well as the weapons charges.