OPINION OF THE COURT
STAPLETON, Circuit Judge.
This civil rights action mounts a Fourth Amendment challenge to a practice of the Philadelphia District Attorney’s Office which the parties have labeled “the rearrest policy.”
I.
Rule 502[1] of the Pennsylvania Rules of Criminal Procedure provides that a criminal proceeding may “be instituted by ... an arrest without a warrant” if there is probable cause to believe that the subject has committed a felony. Pa. R.Crim. P. 502. In the case of a warrantless arrest, a complaint is filed and a “preliminary arraignment” is held “without unnecessary delay.” Pa. R.Crim. P. 518(a). A reference in the commentary of the Rules to County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), makes clear that under ordinary circumstances the preliminary arraignment must be held within 48 hours. See Pa. R.Crim. P. 540(C). At the preliminary arraignment, a neutral magistrate “makes a determination of probable cause.” Pa. R.Crim. P. 540(C), 42 Pa. Cons.Stat. § 540(C). If he determines that probable cause does not exist, the subject is discharged. Id. Otherwise, bail is set and a date for a preliminary hearing is fixed no “less than 3 nor more than 10 days after the preliminary arraignment.” Pa. R.Crim. P. 540(E)(1). If the Commonwealth presents a “prima facie case” at the preliminary hearing, the subject is held over for trial. Pa. R.Crim. P. 543. If “a prima facie case of the defendant’s guilt is not established at the preliminary hearing, and no ... continuance” is granted, *224 the charge is dismissed and the subject is discharged. Pa. R.Crim. P. 542(D). Under Rule 544(a), “[w]hen charges are dismissed ... at ... a preliminary hearing, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the refiling of a complaint.” Pa. R.Crim. P. 544(a).
Under the challenged rearrest policy, the District Attorney, from time to time when she concludes she has probable cause, reinitiates criminal charges that have been dismissed at a preliminary hearing by rearresting the subject and refiling a complaint pursuant to the authority of Rules 518 and 544. The person arrested is then held to await a new preliminary arraignment within 48 hours. Cash or property posted on the initial arrest is applied against the bail set at that arraignment.[2] This reinitiation of a criminal proceeding occurs without a judicial determination that the District Attorney has probable cause to believe that the subject has committed a felony. Because no prima facie case has been presented at the preliminary hearing in such cases and because there has been no judicial finding of probable cause prior to the rearrest, rearrests pursuant to the District Attorney’s policy are here challenged as unreasonable seizures under the Fourth Amendment.[3]
PlaintiffiAppellee Robert Stewart brought this S 1983 action on behalf of himself and others similarly situated. The District Court granted class certification and enjoined the District Attorney from employing the rearrest policy. The certified class was defined as follows:
All persons who have been or will in the future be subjected to the practice and policy of the ... [Philadelphia] District Attorney of re-arresting, without judicial authorization, persons whose criminal charges have been dismissed by a Philadelphia Municipal Court Judge based on a determination that the Commonwealth had not established, by reason of lack of evidence or lack of prosecution, probable cause to hold the criminal case for trial.
The District Court’s injunction prohibited the District Attorney from “ordering the re-arrest and detention, without judicial authorization, of any persons on any charge which has been dismissed by a Philadelphia Municipal Court judge at a preliminary hearing because of the failure of the Commonwealth ... to establish probable cause or a prima facie case.” This appeal followed. We will reverse.
II.
Stewart was arrested and charged with one count of the felony of aggravated assault, and with misdemeanor counts of simple assault, recklessly endangering another person, and possession of an instrument of crime. One day after his arrest, Stewart was preliminarily arraigned and released on bail. A preliminary hearing was subsequently held in Philadelphia Municipal Court. At the conclusion of that hearing, the presiding judge ruled that the Commonwealth had not presented a prima facie case against Stewart on the felony count. Accordingly, the judge dismissed the felony count of aggravated assault and scheduled Stewart’s case for trial on the *225 remaining misdemeanor counts only. The Assistant District Attorney who was prosecuting Stewart in the courtroom immediately reinitiated an identical felony charge of aggravated assault. The allegations of the new complaint were identical to those in the complaint that had just been dismissed. Police re-arrested Stewart on the “dismissed” charge, and detained him for another preliminary hearing. Because Stewart was not able to make the bail set at his second preliminary arraignment, he remained in jail for approximately two weeks until his second preliminary hearing was held. Stewart filed this civil rights action under 42 U.S.C. § 1988 while he was in custody awaiting the second preliminary hearing.
III.
The District Attorney first argues that the District Court should have abstained from exercising its jurisdiction under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The District Court decided not to abstain, and we conclude that it did not abuse its discretion in doing so.
Younger was arrested under a state criminal statute which allegedly violated his right to free speech under the First and Fourteenth Amendments. While the state charges were still pending, Younger filed an action in federal court to enjoin his prosecution. The District Court agreed that the statute was void for vagueness and overbroad in violation of the First and Fourteenth Amendments and enjoined the District Attorney from enforcing it. See id. at 40, 91 S.Ct. 746. The Supreme Court reversed. It held, based on principles of equity and federalism, that a federal court should not enjoin a state criminal proceeding without a showing that the plaintiff would suffer irreparable injury “both great and immediate.” Id. at 46, 91 S.Ct. 746 (quoting Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926)). This standard cannot be met, the Court said, if “the threat to the plaintiffs federally protected rights ... [can be addressed] by his defense against a single criminal prosecution.” Id. at 46, 91 S.Ct. 746.
In Younger, the federal plaintiff requested that the District Court find unconstitutional the law under which the government was prosecuting him and thereby foreclose his prosecution. In this case, the equitable relief requested is not aimed at state prosecutions, but at the legality of the rearrest policy and the pretrial detention of a class of criminal defendants. The issues here raised could not have been raised in defense of Stewart’s criminal prosecution, and the injunction sought would not bar his prosecution.
We conclude that the Court’s application of Younger in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), controls our resolution of the abstention issue here. The defendants in Gerstein were arrested pursuant to a prosecutor’s information. Under applicable Florida rules and ' statutes, prosecutors could charge noncapital offenses by information without a preliminary hearing or leave of court. The Florida courts had previously held that the prosecutor’s filing of an information “foreclosed the suspect’s right to a preliminary hearing.” Id. at 106, 95 S.Ct. 854.
Several arrestees detained under this procedure filed a class action against county officials in federal District Court alleging that they had “a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and in-junctive relief.” Id. at 107, 95 S.Ct. 854. The State of Florida argued that Younger compelled abstention because federal action would interfere with state proceedings *226 by requiring the state to grant prompt probable cause hearings contrary to the state’s own rules and procedures. The Court unanimously rejected that argument. The Court stated:
The District Court correctly held that respondents’ claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions[ ] [under] Younger v. Harris. The injunction was not directed at the state prosecutions as such, but only at the legality of the pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.
Id. at 108 n. 9, 95 S.Ct. 854 (citations omitted, emphasis added). We find the situation before us analogous to that before the Supreme Court in Gerstein.
We also find the Supreme Court’s subsequent characterization of Gerstein to be helpful here. In Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Court distinguished Gerstein from the case before it on the following ground:
The reliance on Gerstein is misplaced. That case involved a challenge to pretrial restraint on the basis of a prosecutor’s information alone, without the benefit of a determination of probable cause by a judicial officer. This Court held that the District Court properly found that the action was not barred by Younger because the injunction was not addressed to a state proceeding and therefore would not interfere with the criminal prosecutions themselves. “The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.”
442 U.S. at 431, 99 S.Ct. 2371 (quoting Gerstein, 420 U.S. at 108 n. 9, 95 S.Ct. 854). That is precisely the situation here.
The District Court properly exercised jurisdiction over this matter.
rv.
To obtain certification, Stewart was required to show that the purported class met the four prerequisites of Rule 23(a) and at least one of the elements of Rule 23(b). See Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir.1994). Rule 23(a) states:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Fed.R.Civ.P. 23(a). The District Attorney argues that Stewart’s claim fails to meet the (1) numerosity, (2) commonality, and (3) typicality elements required for class certification under Rule 23(a). She concedes that the named class representative will adequately represent the interest of absent class members as is required under Rule 23(4).
Rule 23(b)(2) provides for class certification where the requirements of Rule 23(a) are satisfied and “the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunc-tive relief or corresponding declaratory relief with respect to the class as a whole.” Fed.R.Civ.P. 23(b)(2).
A. Numerosity
No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of *227 plaintiffs exceeds 40, the first prong of Rule 23(a) has been met. See 5 James Wm. Moore et al., Moore’s Federal Practice § 23.22[3][a] (Matthew Bender 3d ed.1999). Here, both parties concede that, prior to the injunction, the District Attorney had re-arrested 67 defendants under Rule 544 pursuant to the disputed policy. Forty-one of those defendants had been discharged for lack of evidence and the resulting failure to establish probable cause. The number of class members will increase further if the policy continues in force. Accordingly, plaintiffs satisfy the numerosity requirement of Rule 23(a).
B. Commonality
“The concepts of commonality and typicality are broadly defined and tend to merge. Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented. Despite their similarity, however, commonality and typicality are distinct requirements under Rule 23.” Baby Neal v. Casey, 43 F.3d at 56 (internal citations omitted). “The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.” Id. (emphasis added).
The District Attorney argues that circumstances among the potential class members vary to such an extent that there is no commonality. She reminds us that defendants can have their charges dismissed at the preliminary hearing for many different reasons. The District Attorney also argues that a discharge for a lack of prosecution, in which the charges are dismissed because the government cannot produce a necessary witness and the court does not grant a continuance, differs from a discharge for a lack of evidence, in which the government fails to make a 'prima facie case. She insists that these “dissimilar” situations cannot be included in the instant class certification.
However, this argument fails to recognize that, despite the differences that undoubtedly exist from case to case, common issues of law and fact predominate. The class is defined such that each class member had his/her criminal case discharged by a judicial officer and was then re-arrested based solely upon the exercise of prosecutorial discretion, without any judicial determination of probable cause for the arrest. The District Court specifically enjoined re-arrest of persons against whom charges have been dismissed at the preliminary hearing because of failure to establish probable cause or a prima facie case. Therefore, “at least one question of fact or law” is common to each member of this prospective class.
C. Typicality
The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members. See 5 James Wm. Moore et al., Moore’s Federal Practice § 23.24[1]; Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d.Cir.2001) (“The typicality inquiry ... centers on whether the named plaintiffs’ individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.”) (citation omitted). “[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.” Baby Neal, 43 F.3d at 58 (citation omitted). “Factual differences will not render a claim atypical if the claim arises from the *228 same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory.” Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3d Cir.1992) (quoting 1 Herbert B. Newberg, Newberg on Class Actions § 3.15 at 168 (2d ed.1985)). Here, Stewart challenges the District Attorney’s re-arrest policy and the constitutionality of that policy is at the heart of each of the absent members claims.
D. Rule 23(b)(2)
Rule 23(b)(2) is designed primarily to authorize class action treatment for cases like the one before us that seek injunctive relief. See Baby Neal, 43 F.3d at 58. Moreover, it is generally recognized that civil rights actions seeking relief on behalf of classes like the putative class normally meet the requirements of Rule 23(b)(2). See id. at 59 (“[T]he injunctive class provision was ‘designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons.’ ”) (citations omitted). Finally, Baby Neal teaches that courts should look to whether “the relief sought by the named plaintiffs [will] benefit the entire class.” Id. at 59. Here, Stewart seeks injunctive relief in a civil rights claim and the relief sought could benefit the entire class.
Thus, we conclude that the District Court did not abuse its discretion in certifying this litigation as a class action. Accordingly, we now turn to the merits of the dispute.
V.
The applicable Fourth Amendment law “represents a necessary accommodation between the individual’s right to liberty and the State’s duty to control crime.” Gerstein, 420 U.S. at 112, 95 S.Ct. 854. From the individual’s perspective, that accommodation provides that he or she may not be arrested in the absence of probable cause and may not be detained for over 48 hours without a neutral magistrate’s review of that probable cause determination. See Gerstein, 420 U.S. at 114, 95 S.Ct. 854; County of Riverside, 500 U.S. at 56, 111 S.Ct. 1661. Conversely, from the state’s perspective, that accommodation provides that a state may arrest and detain an individual without a warrant if it has probable cause and provides for review of the probable cause determination by a neutral party within 48 hours of the arrest. Id. It is the function of the reviewing neutral magistrate to determine “whether the facts available to the officers at the moment of the arrest would ‘warrant a man of reasonable caution in the belief that an offense has been committed.” Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).
The record does not establish that Stewart or any member of the class was deprived of anything that this constitutional accommodation guarantees them. It does not establish that the officer initially arresting Stewart (or any member of the class) or the officer rearresting Stewart (or any member of the class) lacked information at the time of the arrest that would “warrant a man of reasonable caution in the belief that an offense had been committed.” Id. Nor does the record establish that Stewart (or any member of the class) was detained for a total of more than 48 hours without a review of the probable cause determinations by a neutral magistrate. These facts should have ended the matter and mandated summary judgment in defendants’ favor. The Pennsylvania law requiring probable cause for arrests *229 and a preliminary arraignment within 48 hours satisfies all that the Fourth Amendment requires, and there is no reason to believe that law was not fully complied with here. See Commonwealth v. Abdul-Salaam, 544 Pa. 514, 678 A.2d 342, 347-48, n. 10 (Pa.1996) (noting that Pennsylvania’s pretrial process up through the preliminary arraignment addresses the constitutional requirements of Gerstein and County of Riverside).[4]
What Stewart asks us to do is to deprive Pennsylvania of its right to reinitiate a criminal proceeding in accordance with a generally applicable process that is entirely consistent with the dictates of the applicable Fourth Amendment law. There is no precedent of which we are aware, however, for the proposition that the federal Constitution prohibits the reinitiation of a criminal proceeding in such a manner where double jeopardy has not attached and no pattern of prosecutorial harassment has been alleged.[5]
Stewart’s argument is predicated on the proposition that the federal Constitution requires Pennsylvania to give preclusive effect to the disposition of a municipal judge at a preliminary hearing unless and until there is a finding of probable cause in a subsequent judicial proceeding. This novel proposition and the arguments advanced in support of it are unpersuasive.
Contrary to Stewart’s repeated assertions, there is nothing inherently inconsistent between a finding that the Commonwealth has failed to establish a prima facie case at the preliminary hearing and the existence of probable cause for a second arrest.
First, it is not at all clear to us that the “probable cause” standard and the “prima facie case” standard under Pennsylvania law require the Commonwealth to provide the same level of assurance that the subject has committed a crime. The different terms chosen to describe the Commonwealth’s burden at the time of arrest and preliminary arraignment and its burden at the time of the preliminary hearings, suggest to us that prima facie case standard was intended to require different and greater assurance of guilt. “Probable cause,” of course, speaks in terms of a probability while “prima facie case” has been defined by the Pennsylvania Supreme Court as evidence “such that if presented at the trial in court, and accepted as true, the judge would be warranted in letting the trial go to the jury.” Commonwealth v. Wojdak, 502 Pa. 359, 466 A.2d 991, 996 (Pa.1983) (emphasis in original) (citations omitted). Thus, while the Commonwealth need not convince the preliminary hearing judge of guilt beyond a reasonable doubt, it must nonetheless present admissible evidence at the preliminary hearing that would warrant a reasonable jury in finding each of the elements of *230 the offense by that standard. Id. It is thus not surprising to find Pennsylvania cases recognizing that the standard of probable cause and the prima facie case standard are conceptually distinct. See Commonwealth v. Cartagena, 482 Pa. 6, 393 A.2d 350, 355 (Pa.1978) (plurality opinion) (finding that probable cause had existed for the institution of criminal proceedings, though a prima facie case had not been established); Commonwealth v. Days, 718 A.2d 797, 800 (Pa.Super.1998) (stating in the context of affirming that a magistrate properly determined that probable cause existed to issue a search warrant that “[p]robable cause is based on a finding of probability, not a prima facie showing of criminal activity”); Commonwealth v. Scott, 279 Pa.Super. 8, 420 A.2d 717, 720 (Pa.Super.1980) (“It would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of prima facie case when there had not even been a hint of harassment or failure to show probable cause.”).
Even if “probable cause” and “prima facie case” are coterminous standards, however, we would nevertheless conclude that there is nothing inherently inconsistent between a failure of the Commonwealth to establish a prima facie case at the preliminary hearing and the existence of probable cause for a second arrest. The database that the Commonwealth may consult in determining whether there is probable cause for a second arrest is different from, and more comprehensive than, the database to which consideration is limited at the preliminary hearing.
First, in determining whether there is probable cause for a second arrest the prosecutor is entitled to consider any information known to him that a reasonably prudent man might regard as reliable. See McKibben v. Schmotzer, 700 A.2d 484, 492 (Pa.1997) (defining probable cause as “a reasonable ground or suspicion supported by circumstances sufficient to warrant an ordinarily prudent man in the same situation in believing that the party is guilty of the offense”). By way of contrast, the presiding judge at a preliminary hearing must find that the Commonwealth has not presented a prima facie case unless it has produced information in legally admissible form substantiating each element of the offense. See Commonwealth ex rel. Buchanan v. Verbonitz, 525 Pa. 413, 581 A.2d 172, 174 (Pa.1990) (holding that where the Commonwealth relied upon inadmissible hearsay to establish a prima facie case, it did not meet its burden of producing at the preliminary hearing “legally competent evidence to demonstrate the existence of facts which connect the accused to the crime charged”).
Second, the database available to the prosecutor is different from that available to the judge determining the prima facie case issue because a prima facie ease can exist only on the basis of legally admissible evidence presented in court at the time preliminary hearing, while probable cause can exist on the basis of all the reliable information known to the prosecution at the time of the second arrest. The District Attorney notes, for example, that the most frequent reason for a re-arrest is the failure of a witness to appear who the Commonwealth has reason to believe can provide important evidence of guilt. In such a situation, a determination that a prima facie case has not been presented is not inconsistent with the existence of probable cause for immediate re-arrest. Moreover, given that preliminary hearings are often held while the investigation of the crime is continuing, it will frequently be the case that the Commonwealth will gain additional knowledge of incriminating evidence within minutes or hours after the prelimi *231 nary hearing concludes. The District Court’s injunction bars the District Attorney from ever reinitiating charges without prior judicial approval, no matter how much additional incriminating information she learns in the course of her investigation.
More fundamentally, however, even • if there were some necessary inconsistency between a finding that the Commonwealth failed to present a prima facie case at the preliminary hearing and the existence of probable cause for rearrest, we would still be unable to find anything in the United States Constitution that requires a state to give collateral effect to a preliminary hearing finding so as to preclude the state from reinitiating the prosecution in the normal manner. As the District Court concluded, traditional principles of res judicata would not appear to require that collateral effect be given to a preliminary hearing disposition,[6] but even if that were not the case, Pennsylvania would be free, within the limits of due process, to fashion its own rules of preclusion.
In summary, Pennsylvania’s requirement that a criminal prosecution may not go forward unless the state presents evidence constituting a prima facie case of guilt before a magistrate at the time of the preliminary hearing is not necessary to satisfy the requirements of the Fourth Amendment under Gerstein and County of Riverside. If Pennsylvania chooses to impose this additional requirement, there is, of course, no federal constitutional impediment to its doing so. Nor, of course, is there any constitutional mandate that it do so.
What Stewart asks us to do is to take a Pennsylvania hearing process that is not constitutionally required and fashion a federal constitutional rule giving collateral effect to the magistrate’s ruling at that hearing so as to bar the state from exercising its right to arrest when it believes in good faith that it has probable cause. This proposed rule appears to be based solely on an appeal that respect be accorded the authority of the municipal judge who presides at the preliminary hearing. While Pennsylvania could, if it so chose, accord such respect to a judge’s prima facie case ruling, we find nothing in the United States Constitution that requires it to do so.[7]
VI.
The judgment of the District Court will be reversed, and this matter will be remanded for further proceedings consistent with this opinion.

. On March 1, 2000, the Supreme Court of Pennsylvania signed an order authorizing the reorganization and renumbering of the Pennsylvania Rules of Criminal Procedure. This order became effective on April 1, 2001. We use the current numbering system throughout this opinion.

. The Pennsylvania Rules of Criminal Procedure do not specifically address the issue posed by the imposition of bail following rearrest. However, the record indicates that in May 2000, the Municipal Court of Philadelphia, with the agreement and cooperation of the District Attorney’s Office and the Defender Association, instituted a policy permitting bail posted on an initial arrest to be credited to bail set as a result of a re-arrest.

. The District Attorney's rearrest policy is not challenged here as violative of Pennsylvania law and, accordingly, we assume for present purposes that it is consistent with that law.

. Stewart’s rearrest, of course, would have violated the Fourth Amendment had it been made without probable cause. The same would be true with respect to an arrest of any member of the class without probable cause. Stewart has not attempted to show, however, that the district attorney lacked probable cause at the time of his arrest or anyone else’s. The record does not reveal, for example, what information was presented to the neutral magistrate at Stewart’s second preliminary arraignment and was there found to constitute probable cause.

. As the commentary to Pa. R.Crim. P. 544 explains, the Pennsylvania "courts have held that the reinstitution [of a prosecution under that rule] may be barred [when] the Commonwealth has repeatedly rearrested the defendant in order to harass him....” Pa. R.Crim. P. 544 cmt. (citing Commonwealth v. Thorpe, 549 Pa. 343, 701 A.2d 488 (Pa. 1997); Commonwealth v. Shoop, 420 Pa.Super. 606, 617 A.2d 351 (Pa.Super.1992)). No pattern of harassment is alleged here.

. See Commonwealth v. Cartagena, 482 Pa. 6, 393 A.2d 350 (Pa.1978) (holding that rearrest was proper even though the same charge was dismissed at prior preliminary hearing).

. Given the early stage at which a preliminary hearing occurs and the fluid state of affairs that frequently exist at that stage, Pennsylvania's choice not to accord such respect to the prima facie case ruling is clearly not an unreasonable one.