

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-26-2001

# Stewart v. Abraham

Precedential or Non-Precedential:

Docket 00-2358

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Stewart v. Abraham" (2001). *2001 Decisions.* Paper 298.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/298

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 26, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2358

ROBERT STEWART, on behalf of himself and all others
similarly situated

v.

LYNNE ABRAHAM, District Attorney of Philadelphia
County, individually and in her official capacity; DISTRICT
ATTORNEY'S OFFICE OF PHILADELPHIA COUNTY

Appellants

Appeal from the United States District Court for
the Eastern District of Pennsylvania
Civil Action No. 00-cv-02425
District Judge: Hon. Harvey Bartle III

Argued: November 9, 2000

Before: ROTH, McKEE and STAPLETON, Circuit Jud ges

(Opinion Filed: December 26, 2001)

        RONALD EISENBERG, ESQ.
         (Argued)
        EMILY B. ZIMMERMAN, ESQ.
        FERN KLETTER, ESQ.
        District Attorney's Office
        1421 Arch Street
        Philadelphia, PA 19102
        Attorneys for Appellants

DAVID RUDOVSKY, ESQ. (Argued)
JULES EPSTEIN, ESQ.
Kairys, Rudovsky, Epstein,
 Messing & Rau
924 Cherry Street, Suite 500
Philadelphia, PA 19107

CHARLES CUNNINGHAM, ESQ.
BRADLEY S. BRIDGE, ESQ.
Defender Association of
 Philadelphia
70 North 17th Street
Philadelphia, PA 19103

SETH KREIMER, ESQ.
3400 Chestnut Street
Philadelphia, PA 19104
Attorneys for Appellees

D. MICHAEL FISHER, ESQ.
WILLIAM H. RYAN, JR., ESQ.
ROBERT A. GRACI, ESQ.
STUART SUSS, ESQ.
Office of Attorney General
 of Pennsylvania
Appeals and Legal Services Section
2490 Boulevard of the Generals
Norristown, PA 19403
Attorneys for Amicus-appellant
Attorney General of Pennsylvania

NANCY WINKELMAN, ESQ.
STEPHEN J. SHAPIRO, ESQ.
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA 19103
Attorneys for Amicus-appellee
American Civil Liberties Union of
Pennsylvania

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This civil rights action mounts a Fourth Amendment
challenge to a practice of the Philadelphia District
Attorney's Office which the parties have labeled "the
rearrest policy."

I.

Rule 5021 of the Pennsylvania Rules of Criminal
Procedure provides that a criminal proceeding may "be
instituted by . . . an arrest without a warrant" if there is
probable cause to believe that the subject has committed a
felony. Pa. R. Crim. P. 502. In the case of a warrantless
arrest, a complaint is filed and a "preliminary arraignment"
is held "without unnecessary delay." Pa. R. Crim. P. 518(a).
A reference in the commentary of the Rules to County of
Riverside v. McLaughlin, 500 U.S. 44 (1991), makes clear
that under ordinary circumstances the preliminary
arraignment must be held within 48 hours. See  Pa. R.
Crim. P. 540(C). At the preliminary arraignment, a neutral
magistrate "makes a determination of probable cause." Pa.
R. Crim. P. 540(C), 42 Pa. Cons. Stat. S 540(C). If he
determines that probable cause does not exist, the subject
is discharged. Id. Otherwise, bail is set and a date for a
preliminary hearing is fixed no "less than 3 nor more than
10 days after the preliminary arraignment." Pa. R. Crim. P.
540(E)(1). If the Commonwealth presents a "prima facie
case" at the preliminary hearing, the subject is held over for
trial. Pa. R. Crim. P. 543. If "a prima facie  case of the
defendant's guilt is not established at the preliminary
hearing, and no . . . continuance" is granted, the charge is
dismissed and the subject is discharged. Pa. R. Crim. P.
_____

1. On March 1, 2000, the Supreme Court of Pennsylvania signed an
order authorizing the reorganization and renumbering of the
Pennsylvania Rules of Criminal Procedure. This order became effective
on April 1, 2001. We use the current numbering system throughout this
opinion.

3

542(D). Under Rule 544(a), "[w]hen charges are dismissed . . . at . . . a preliminary hearing, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the refiling of a complaint." Pa. R. Crim. P. 544(a).

Under the challenged rearrest policy, the District Attorney, from time to time when she concludes she has probable cause, reinitiates criminal charges that have been dismissed at a preliminary hearing by rearresting the subject and refiling a complaint pursuant to the authority of Rules 518 and 544. The person arrested is then held to await a new preliminary arraignment within 48 hours. Cash or property posted on the initial arrest is applied against the bail set at that arraignment.[2] This reinitiation of a criminal proceeding occurs without a judicial determination that the District Attorney has probable cause to believe that the subject has committed a felony. Because no prima facie case has been presented at the preliminary hearing in such cases and because there has been no judicial finding of probable cause prior to the rearrest, rearrests pursuant to the District Attorney's policy are here challenged as unreasonable seizures under the Fourth Amendment. [3]

Plaintiff/Appellee Robert Stewart brought this S 1983 action on behalf of himself and others similarly situated. The District Court granted class certification and enjoined the District Attorney from employing the rearrest policy. The certified class was defined as follows:

> All persons who have been or will in the future be subjected to the practice and policy of the . . . [Philadelphia] District Attorney of re-arresting, without

_____

2. The Pennsylvania Rules of Criminal Procedure do not specifically address the issue posed by the imposition of bail following re-arrest. However, the record indicates that in May 2000, the Municipal Court of Philadelphia, with the agreement and cooperation of the District Attorney's Office and the Defender Association, instituted a policy permitting bail posted on an initial arrest to be credited to bail set as a result of a re-arrest.

3. The District Attorney's rearrest policy is not challenged here as violative of Pennsylvania law and, accordingly, we assume for present purposes that it is consistent with that law.

4

judicial authorization, persons whose criminal charges
have been dismissed by a Philadelphia Municipal Court
Judge based on a determination that the
Commonwealth had not established, by reason of lack
of evidence or lack of prosecution, probable cause to
hold the criminal case for trial.

The District Court's injunction prohibited the District
Attorney from "ordering the re-arrest and detention,
without judicial authorization, of any persons on any
charge which has been dismissed by a Philadelphia
Municipal Court judge at a preliminary hearing because of
the failure of the Commonwealth . . . to establish probable
cause or a prima facie case." This appeal followed. We will
reverse.

II.

Stewart was arrested and charged with one count of the
felony of aggravated assault, and with misdemeanor counts
of simple assault, recklessly endangering another person,
and possession of an instrument of crime. One day after his
arrest, Stewart was preliminarily arraigned and released on
bail. A preliminary hearing was subsequently held in
Philadelphia Municipal Court. At the conclusion of that
hearing, the presiding judge ruled that the Commonwealth
had not presented a prima facie case against Stewart on the
felony count. Accordingly, the judge dismissed the felony
count of aggravated assault and scheduled Stewart's case
for trial on the remaining misdemeanor counts only. The
Assistant District Attorney who was prosecuting Stewart in
the courtroom immediately reinitiated an identical felony
charge of aggravated assault. The allegations of the new
complaint were identical to those in the complaint that had
just been dismissed. Police re-arrested Stewart on the
"dismissed" charge, and detained him for another
preliminary hearing. Because Stewart was not able to make
the bail set at his second preliminary arraignment, he
remained in jail for approximately two weeks until his
second preliminary hearing was held. Stewart filed this civil
rights action under 42 U.S.C. S 1983 while he was in
custody awaiting the second preliminary hearing.

5

III.

The District Attorney first argues that the District Court should have abstained from exercising its jurisdiction under the doctrine of Younger v. Harris, 401 U.S. 37 (1971). The District Court decided not to abstain, and we conclude that it did not abuse its discretion in doing so.

Younger was arrested under a state criminal statute which allegedly violated his right to free speech under the First and Fourteenth Amendments. While the state charges were still pending, Younger filed an action in federal court to enjoin his prosecution. The District Court agreed that the statute was void for vagueness and overbroad in violation of the First and Fourteenth Amendments and enjoined the District Attorney from enforcing it. See id. at 40. The Supreme Court reversed. It held, based on principles of equity and federalism, that a federal court should not enjoin a state criminal proceeding without a showing that the plaintiff would suffer irreparable injury "both great and immediate." Id. at 46 (quoting Fenner v. Boykin, 271 U.S. 240 (1926)). This standard cannot be met, the Court said, if "the threat to the plaintiff 's federally protected rights . . . [can be addressed] by his defense against a single criminal prosecution." Id.  at 46.

In Younger, the federal plaintiff requested that the District Court find unconstitutional the law under which the government was prosecuting him and thereby foreclose his prosecution. In this case, the equitable relief requested is not aimed at state prosecutions, but at the legality of the re-arrest policy and the pretrial detention of a class of criminal defendants. The issues here raised could not have been raised in defense of Stewart's criminal prosecution, and the injunction sought would not bar his prosecution.

We conclude that the Court's application of Younger in Gerstein v. Pugh, 420 U.S. 103 (1975), controls our resolution of the abstention issue here. The defendants in Gerstein were arrested pursuant to a prosecutor's information. Under applicable Florida rules and statutes, prosecutors could charge noncapital offenses by information without a preliminary hearing or leave of court. The Florida courts had previously held that the prosecutor's

6

filing of an information "foreclosed the suspect's right to a preliminary hearing." Id. at 106.

Several arrestees detained under this procedure filed a class action against county officials in federal District Court alleging that they had "a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and injunctive relief." Id. at 107. The State of Florida argued that Younger compelled abstention because federal action would interfere with state proceedings by requiring the state to grant prompt probable cause hearings contrary to the state's own rules and procedures. The Court unanimously rejected that argument. The Court stated:

> The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions[ ] [under] Younger v. Harris. The injunction was not directed at the state prosecutions as such, but only at the legality of the pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.

Id. at 108 n.9 (citations omitted, emphasis added). We find the situation before us analogous to that before the Supreme Court in Gerstein.

We also find the Supreme Court's subsequent characterization of Gerstein to be helpful here. In Moore v. Sims, 442 U.S. 415 (1979), the Court distinguished Gerstein from the case before it on the following ground:

> The reliance on Gerstein is misplaced. That case involved a challenge to pretrial restraint on the basis of a prosecutor's information alone, without the benefit of a determination of probable cause by a judicial officer. This Court held that the District Court properly found that the action was not barred by Younger because the injunction was not addressed to a state proceeding and therefore would not interfere with the criminal prosecutions themselves. "The order to hold

7

> preliminary hearings could not prejudice the conduct
> of the trial on the merits."

442 U.S. at 431 (quoting Gerstein, 420 U.S. at 108 n.9).
That is precisely the situation here.

The District Court properly exercised jurisdiction over
this matter.

IV.

To obtain certification, Stewart was required to show that
the purported class met the four prerequisites of Rule 23(a)
and at least one of the elements of Rule 23(b). See Baby
Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). Rule 23(a)
states:

> One or more members of a class may sue or be sued
> as representative parties on behalf of all only if (1) the
> class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a). The District Attorney argues that
Stewart's claim fails to meet the (1) numerosity, (2)
commonality, and (3) typicality elements required for class
certification under Rule 23(a). She concedes that the named
class representative will adequately represent the interest of
absent class members as is required under Rule 23(4).

Rule 23(b)(2) provides for class certification where the
requirements of Rule 23(a) are satisfied and "the party
opposing the class has acted or refused to act on grounds
generally applicable to the class, thereby making
appropriate final injunctive relief or corresponding
declaratory relief with respect to the class as a whole." Fed.
R. Civ. P. 23(b)(2).

A. Numerosity

No minimum number of plaintiffs is required to maintain
a suit as a class action, but generally if the named plaintiff

8

demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met. See 5 James Wm. Moore et al., Moore's Federal Practice S 23.22[3][a] (Matthew Bender 3d ed. 1999). Here, both parties concede that, prior to the injunction, the District Attorney had re-arrested 67 defendants under Rule 544 pursuant to the disputed policy. Forty-one of those defendants had been discharged for lack of evidence and the resulting failure to establish probable cause. The number of class members will increase further if the policy continues in force. Accordingly, plaintiffs satisfy the numerosity requirement of Rule 23(a).

B. Commonality

"The concepts of commonality and typicality are broadly defined and tend to merge. Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented. Despite their similarity, however, commonality and typicality are distinct requirements under Rule 23." Baby Neal v. Casey, 43 F.3d at 56 (internal citations omitted). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Id. (emphasis added).

The District Attorney argues that circumstances among the potential class members vary to such an extent that there is no commonality. She reminds us that defendants can have their charges dismissed at the preliminary hearing for many different reasons. The District Attorney also argues that a discharge for a lack of prosecution, in which the charges are dismissed because the government cannot produce a necessary witness and the court does not grant a continuance, differs from a discharge for a lack of evidence, in which the government fails to make a prima facie case. She insists that these "dissimilar" situations cannot be included in the instant class certification.

However, this argument fails to recognize that, despite the differences that undoubtedly exist from case to case, common issues of law and fact predominate. The class is

9

defined such that each class member had his/her criminal case discharged by a judicial officer and was then re-arrested based solely upon the exercise of prosecutorial discretion, without any judicial determination of probable cause for the arrest. The District Court specifically enjoined re-arrest of persons against whom charges have been dismissed at the preliminary hearing because of failure to establish probable cause or a prima facie case. Therefore, "at least one question of fact or law" is common to each member of this prospective class.

C. Typicality

The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members. See 5 James Wm. Moore et al., Moore's Federal Practice S 23.24[1]; Newton v. Merrill Lynch, Pearce, Fenner & Smith, Inc., 259 F.3d 154,183 (3d. Cir. 2001) ("The typicality inquiry . . . centers on whether the named plaintiffs' individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.") (citation omitted). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." Baby Neal, 43 F.3d at 58 (citation omitted)."Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3d Cir. 1992) (quoting 1 Herbert B. Newberg, Newberg on Class Actions S 3.15 at 168 (2d ed. 1985)). Here, Stewart challenges the District Attorney's re-arrest policy and the constitutionality of that policy is at the heart of each of the absent members claims.

D. Rule 23(b)(2)

Rule 23(b)(2) is designed primarily to authorize class action treatment for cases like the one before us that seek

10

injunctive relief. See Baby Neal, 43 F.3d at 58. Moreover, it is generally recognized that civil rights actions seeking relief on behalf of classes like the putative class normally meet the requirements of Rule 23(b)(2). See id. at 59 ("[T]he injunctive class provision was `designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons.' ") (citations omitted). Finally, Baby Neal teaches that courts should look to whether "the relief sought by the named plaintiffs [will] benefit the entire class." Id. at 59. Here, Stewart seeks injunctive relief in a civil rights claim and the relief sought could benefit the entire class.

Thus, we conclude that the District Court did not abuse its discretion in certifying this litigation as a class action. Accordingly, we now turn to the merits of the dispute.

V.

The applicable Fourth Amendment law "represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." Gerstein, 420 U.S. at 112. From the individual's perspective, that accommodation provides that he or she may not be arrested in the absence of probable cause and may not be detained for over 48 hours without a neutral magistrate's review of that probable cause determination. See Gerstein, 420 U.S. at 114; County of Riverside, 500 U.S. at 56. Conversely, from the state's perspective, that accommodation provides that a state may arrest and detain an individual without a warrant if it has probable cause and provides for review of the probable cause determination by a neutral party within 48 hours of the arrest. Id. It is the function of the reviewing neutral magistrate to determine "whether the facts available to the officers at the moment of the arrest would `warrant a man of reasonable caution in the belief ' that an offense has been committed." Beck v. Ohio, 379 U.S. 89, 96 (1964) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).

The record does not establish that Stewart or any member of the class was deprived of anything that this

11

constitutional accommodation guarantees them. It does not establish that the officer initially arresting Stewart (or any member of the class) or the officer rearresting Stewart (or any member of the class) lacked information at the time of the arrest that would "warrant a man of reasonable caution in the belief that an offense had been committed." Id. Nor does the record establish that Stewart (or any member of the class) was detained for a total of more than 48 hours without a review of the probable cause determinations by a neutral magistrate. These facts should have ended the matter and mandated summary judgment in defendants' favor. The Pennsylvania law requiring probable cause for arrests and a preliminary arraignment within 48 hours satisfies all that the Fourth Amendment requires, and there is no reason to believe that law was not fully complied with here. See Commonwealth v. Abdul-Salaam, 678 A.2d 342, 347-48, n.10 (Pa. 1996) (noting that Pennsylvania's pretrial process up through the preliminary arraignment addresses the constitutional requirements of Gerstein and County of Riverside).4

What Stewart asks us to do is to deprive Pennsylvania of its right to reinitiate a criminal proceeding in accordance with a generally applicable process that is entirely consistent with the dictates of the applicable Fourth Amendment law. There is no precedent of which we are aware, however, for the proposition that the federal Constitution prohibits the reinitiation of a criminal proceeding in such a manner where double jeopardy has not attached and no pattern of prosecutorial harassment has been alleged.5

_____

4. Stewart's rearrest, of course, would have violated the Fourth Amendment had it been made without probable cause. The same would be true with respect to an arrest of any member of the class without probable cause. Stewart has not attempted to show, however, that the district attorney lacked probable cause at the time of his arrest or anyone else's. The record does not reveal, for example, what information was presented to the neutral magistrate at Stewart's second preliminary arraignment and was there found to constitute probable cause.
5. As the commentary to Pa. R. Crim. P. 544 explains, the Pennsylvania "courts have held that the reinstitution [of a prosecution under that rule] may be barred [when] the Commonwealth has repeatedly rearrested the defendant in order to harass him . . . ." Pa. R. Crim. P. 544 cmt. (citing Commonwealth v. Thorpe, 701 A.2d 488 (Pa. 1997); Commonwealth v. Shoop, 617 A.2d 351 (Pa. Super. 1992)). No pattern of harassment is alleged here.

12

Stewart's argument is predicated on the proposition that the federal Constitution requires Pennsylvania to give preclusive effect to the disposition of a municipal judge at a preliminary hearing unless and until there is a finding of probable cause in a subsequent judicial proceeding. This novel proposition and the arguments advanced in support of it are unpersuasive.

Contrary to Stewart's repeated assertions, there is nothing inherently inconsistent between a finding that the Commonwealth has failed to establish a prima facie case at the preliminary hearing and the existence of probable cause for a second arrest.

First, it is not at all clear to us that the "probable cause" standard and the "prima facie case" standard under Pennsylvania law require the Commonwealth to provide the same level of assurance that the subject has committed a crime. The different terms chosen to describe the Commonwealth's burden at the time of arrest and preliminary arraignment and its burden at the time of the preliminary hearings, suggest to us that prima facie case standard was intended to require different and greater assurance of guilt. "Probable cause," of course, speaks in terms of a probability while "prima facie case" has been defined by the Pennsylvania Supreme Court as evidence "such that if presented at the trial in court, and accepted as true, the judge would be warranted in letting the trial go to the jury." Commonwealth v. Wojdak, 466 A.2d 991, 996 (Pa. 1983) (emphasis in original) (citations omitted). Thus, while the Commonwealth need not convince the preliminary hearing judge of guilt beyond a reasonable doubt, it must nonetheless present admissible evidence at the preliminary hearing that would warrant a reasonable jury in finding each of the elements of the offense by that standard. Id. It is thus not surprising to find Pennsylvania cases recognizing that the standard of probable cause and the prima facie case standard are conceptually distinct. See Commonwealth v. Cartegena, 393 A.2d 350, 355 (Pa. 1978) (plurality opinion) (finding that probable cause had existed for the institution of criminal proceedings, though a prima facie case had not been established); Commonwealth v. Days, 718 A.2d 797, 800 (Pa. Super. 1998) (stating in the

13

context of affirming that a magistrate properly determined that probable cause existed to issue a search warrant that "[p]robable cause is based on a finding of probability, not a prima facie showing of criminal activity"); Commonwealth v. Scott, 420 A.2d 717, 720 (Pa. Super. 1980) ("It would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of prima facie case when there had not even been a hint of harassment or failure to show probable cause.").

Even if "probable cause" and "prima facie case" are coterminus standards, however, we would nevertheless conclude that there is nothing inherently inconsistent between a failure of the Commonwealth to establish a prima facie case at the preliminary hearing and the existence of probable cause for a second arrest. The database that the Commonwealth may consult in determining whether there is probable cause for a second arrest is different from, and more comprehensive than, the database to which consideration is limited at the preliminary hearing.

First, in determining whether there is probable cause for a second arrest the prosecutor is entitled to consider any information known to him that a reasonably prudent man might regard as reliable. See McKibben v. Schmotzer, 700 A.2d 484, 492 (Pa. 1997) (defining probable cause as "a reasonable ground or suspicion supported by circumstances sufficient to warrant an ordinarily prudent man in the same situation in believing that the party is guilty of the offense"). By way of contrast, the presiding judge at a preliminary hearing must find that the Commonwealth has not presented a prima facie case unless it has produced information in legally admissible form substantiating each element of the offense. See Commonwealth ex rel Buchanan v. Verbovitz, 581 A.2d 172, 174 (Pa. 1990) (holding that where the Commonwealth relied upon inadmissible hearsay to establish a prima facie case, it did not meet its burden of producing at the preliminary hearing "legally competent evidence to demonstrate the existence of facts which connect the accused to the crime charged").

Second, the database available to the prosecutor is different from that available to the judge determining the

14

prima facie case issue because a prima facie case can exist only on the basis of legally admissible evidence presented in court at the time preliminary hearing, while probable cause can exist on the basis of all the reliable information known to the prosecution at the time of the second arrest. The District Attorney notes, for example, that the most frequent reason for a re-arrest is the failure of a witness to appear who the Commonwealth has reason to believe can provide important evidence of guilt. In such a situation, a determination that a prima facie case has not been presented is not inconsistent with the existence of probable cause for immediate re-arrest. Moreover, given that preliminary hearings are often held while the investigation of the crime is continuing, it will frequently be the case that the Commonwealth will gain additional knowledge of incriminating evidence within minutes or hours after the preliminary hearing concludes. The District Court's injunction bars the District Attorney from ever reinitiating charges without prior judicial approval, no matter how much additional incriminating information she learns in the course of her investigation.

More fundamentally, however, even if there were some necessary inconsistency between a finding that the Commonwealth failed to present a prima facie case at the preliminary hearing and the existence of probable cause for rearrest, we would still be unable to find anything in the United States Constitution that requires a state to give collateral effect to a preliminary hearing finding so as to preclude the state from reinitiating the prosecution in the normal manner. As the District Court concluded, traditional principles of res judicata would not appear to require that collateral effect be given to a preliminary hearing disposition,6 but even if that were not the case, Pennsylvania would be free, within the limits of due process, to fashion its own rules of preclusion.

In summary, Pennsylvania's requirement that a criminal prosecution may not go forward unless the state presents

_____

6. See Commonwealth v. Cartagena, 393 A.2d 350 (Pa. 1978) (holding that rearrest was proper even though the same charge was dismissed at prior preliminary hearing).

15

evidence constituting a prima facie case of guilt before a magistrate at the time of the preliminary hearing is not necessary to satisfy the requirements of the Fourth Amendment under Gerstein and County of Riverside. If Pennsylvania chooses to impose this additional requirement, there is, of course, no federal constitutional impediment to its doing so. Nor, of course, is there any constitutional mandate that it do so.

What Stewart asks us to do is to take a Pennsylvania hearing process that is not constitutionally required and fashion a federal constitutional rule giving collateral effect to the magistrate's ruling at that hearing so as to bar the state from exercising its right to arrest when it believes in good faith that it has probable cause. This proposed rule appears to be based solely on an appeal that respect be accorded the authority of the municipal judge who presides at the preliminary hearing. While Pennsylvania could, if it so chose, accord such respect to a judge's prima facie case ruling, we find nothing in the United States Constitution that requires it to do so.7

VI.

The judgment of the District Court will be reversed, and this matter will be remanded for further proceedings consistent with this opinion.

_____

7. Given the early stage at which a preliminary hearing occurs and the fluid state of affairs that frequently exist at that stage, Pennsylvania's choice not to accord such respect to the prima facie case ruling is clearly
not an unreasonable one.

16

McKEE, Circuit Judge concurring in part, and dissenting in part:

I join sections II, III, and IV of the majority opinion, however I disagree with the majority's conclusion that the District Attorney's implementation of Pa. R. Crim. P. 544 is constitutional.1 I therefore dissent from section V of the majority opinion.

I.

Under Pa. R. Crim. P. 544, the Philadelphia District Attorney's Office has adopted a practice of re-arresting some defendants immediately after a Municipal Court Judge has discharged felony charges at a preliminary hearing. The discharges are based upon the judge's conclusion that the defendant's continued detention is not supported by probable cause. The re-arrests do not result from any additional evidence, or changed circumstances. An Assistant District Attorney merely restamps the same criminal complaint that was originally filed. The defendant is then immediately re-arrested on the same charges that have just been dismissed even though a judge has just ruled that the evidence offered in support of the those charges is insufficient to support them.2  Rule 544 does not require this practice, nor can it legitimize this practice.

_____

1. As the majority notes, The Supreme Court of Pennsylvania entered an order reorganizing and renumbering the Pennsylvania Rules of Criminal Procedure on Mach 1, 2000. Like my colleagues, I use the current numbering system throughout this dissent.

2. My colleagues suggest that the decision to re-arrest may have been based on additional information that the prosecutor learned from some "database" and that this information may not have been known when the judge discharged the felony charges. See Maj. Op. at 14 ("The database that the Commonwealth may consult in determining whether there is probable cause for a second arrest is different from and more comprehensive than, the database to which consideration is limited at the preliminary hearing."). It is not at all clear what this data base is, where it came from, or what it contains.

The only thing that is clear about this "database" is that there is no mention of it in the record, and that the prosecutor did not have time to consult any such "database" before Stewart was re-arrested. That re-

17

II. Applicable Rules of Criminal Procedure.

Under Pa. R. Crim. P. 518(a), a defendant in Philadelphia County who is charged in a complaint with a felony and arrested without a warrant is detained pending a preliminary arraignment. That preliminary arraignment usually occurs within 24 hours of the defendant's arrest. See Pa. R. Crim. P. 518(a). At the preliminary arraignment a Bail Commissioner, functioning as the "issuing authority," informs the defendant of his/her rights, including the right to counsel, and appoints counsel if necessary.3 The defendant is also given a copy of the criminal complaint that has been accepted for filing, Pa. R. Crim. P. 540(a), 520, 523 and unless a defendant who is represented by counsel waives a preliminary hearing, the Bail Commissioner/issuing authority must also set a date for a preliminary hearing before a Philadelphia Municipal Court judge. That date can be "no less than 3 nor more than 10 days after the preliminary arraignment." Pa. R. Crim. P. 540(e)(1).

If the Commonwealth is able to establish a prima facie case for a felony charge at the ensuing preliminary hearing,

_____

arrest here occurred as soon as the judge dismissed the felony charges. Stewart was apparently arrested in the courtroom, and in front of the judge who had just ruled that there was no probable cause to support his detention on those charges. Moreover, the District Attorney has not even attempted to justify this practice by relying on some unspecified database of additional information that would have supported the dismissed charges if the judge had only known about it.

3. In 1984, the Pennsylvania General Assembly created the office of Bail Commissioner for the Philadelphia Municipal Court. See 42 Pa. Cons. Stat. Ann. S 1123(a); see also Murray v. Silberstein, 882 F.2d 61, 62 (3d Cir. 1989) (noting creation of Bail Commissioner position by the Pennsylvania legislature). In 1994, former Rule 140 (now Rule 540) of the Pa. R. Crim. P. was amended to require the "issuing authority" at a preliminary arraignment to determine probable cause. Pa. R. Crim. P. 540(c). This amendment to Rule 140 was adopted in response to County of Riverside v. McLaughlin, 500 U.S. 44 (1991), wherein the Supreme Court held that a probable cause determination must generally be made within 48 hours of arrest. In Philadelphia County, the issuing authority is the bail commissioner.

18

the Municipal Court Judge orders the defendant held for trial in the Court of Common Pleas on the felony charge(s). If the Municipal Court judge dismisses all felony charges due to lack of evidence or lack of prosecution so that only misdemeanor charges remain, the defendant is tried on those misdemeanor charges in Municipal Court. See Pa. R. Crim. P. 543(a), 1001(A). If the Municipal Court Judge at the preliminary hearing concludes that the Commonwealth has not established a prima facie case on any of the charges, the judge must discharge the defendant unless a continuance is granted pursuant to a request "supported by reasonable grounds." See Pa. R. Crim. P. 542(D).4

Under the Rules of Criminal Procedure in effect in Pennsylvania before January 1, 2000, if a Municipal Court

_____

4. The majority notes that the District Attorney suggests that the most common reason defendants are immediately re-arrested at the preliminary hearing is because important witnesses fail to appear thus compromising the Commonwealth's ability to establish probable cause. See Maj. Op. at 15. However, that was not the case here. The prosecution presented all of the evidence against Stewart it wanted to, and a judge ruled that evidence insufficient to detain him on felony charges.

Inasmuch as Rule 542(D) specifies that a prosecutor may request a continuance "supported by reasonable grounds," I fail to see why re-arrest and imprisonment rather than requesting a continuance is the favored response to a witnesses failure to appear. Requiring the prosecutor to request a continuance rather than automatically resorting to the expediency of detention places no burden whatsoever on the Commonwealth. It merely requires that the prosecutor offer an explanation for the witnesses failure to appear, and assumes that a judge will evaluate the adequacy of the explanation. This is no more than is required of lawyers in criminal and civil courtrooms all over this country everyday. Prosecutors in Philadelphia County are as able as the lawyers elsewhere, and I fail to see why the Assistant District Attorneys in Philadelphia are not required to request a continuance and offer an explanation for a witnesses failure to appear just like other lawyers are expected to. This would allow a judge to gauge the efforts that were made to produce the witness and also afford an opportunity for the judge to decide if bail should be continued or reduced if the continuance is granted. Under the current practice a defendant can be re-arrested and detained in jail even if the witness did not appear because of some dereliction on the part of the prosecutor.

19

judge dismissed criminal charges at the preliminary hearing due to lack of evidence or lack of prosecution, the attorney for the Commonwealth could reinstitute charges by submitting a new criminal complaint and an affidavit of probable cause to a judge of the Court of Common Pleas. See Phila. Crim. R. 500(H). However, a warrant for the defendant's re-arrest would only issue if the court approved the submission. If the initial dismissal of charges in the Municipal Court was based on a finding of no probable cause, the preliminary hearing following any re-arrest was scheduled before a judge of the Court of Common Pleas. In all cases, however, a re-arrest could proceed only after a judicial officer had approved a resubmission and determined that there was indeed probable cause for the re-arrest.

On January 1, 2000, the current version of Pa. R. Crim. P. 544 (then Pa. R. Crim P. 143) went into effect. The Rule provides:

> Reinstituting Charges Following Withdrawal or Dismissal.
>
> (A) When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the refiling of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.
>
> (B) Following the refiling of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 23 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth reasons for requesting a different issuing authority.

Pa. R. Crim. P. 544. Nothing in the text of that rule requires the defendant's re-arrest pending completion of the second preliminary hearing. That practice arises from the specific policy at issue here, not from the language of the Rule.

20

The majority believes that Stewart is asking us "to deprive Pennsylvania of its right to reinitiate a criminal proceeding" following discharge of felony charges at a preliminary hearing. Maj. Op. at 12. The majority concludes that "[t]here is no precedent of which we are aware, . . . for the proposition that the federal Constitution prohibits the reinitiation of a criminal proceeding in such a manner where double jeopardy has not attached and no pattern of prosecutorial harassment has been alleged." Id. However, that framing of the issue mischaracterizes the relief Stewart is seeking as well as the district court's order. The district court only enjoined the District Attorney from "ordering the re-arrest and detention, without judicial authorization, of any persons on any charge which has been dismissed by a Philadelphia Municipal Court judge at a preliminary hearing because of the failure of the Commonwealth .. . to establish probable cause or a prima facie case," id. at 5, and that is all Stewart is asking us to do.

The injunction does not preclude prosecutions; it precludes unauthorized detentions. It prevents the District Attorney from detaining a defendant pending a second preliminary hearing where a judge has dismissed the felony charges holding a defendant in custody. It also prevents the prosecutor's assessment of probable cause from outweighing and reversing a judicial determination of probable cause. I do not think a request to do that is all that extraordinary.

Accordingly, the majority's declaration that "[t]he District Court's injunction bars the District Attorney from ever reinitiating charges without prior judicial approval, no matter how much additional incriminating information she learns in the course of her investigation," is simply wrong. See Maj. Op. at 15 (emphasis in original).

Moreover, the District Attorney is not even arguing that enforcing the district court's injunction has the effect the majority assigns to it; nor could she. In discussions between the District Attorney's Office, the Defender Association of Philadelphia, and the Philadelphia Municipal Court, the District Attorney initially proposed that prosecutions be reinitiated under Rule 544 by simply refiling charges immediately after the Municipal Court

21

dismissal without re-arresting the defendant. Pursuant to that policy, the refiled case would have received a new date for a preliminary hearing and the defendant would have received a subpoena to appear on that new date. For reasons unknown to us, the Defender Association and the Municipal Court rejected that proposal. Accordingly, since April 17, 2000, the District Attorney has ordered some defendants re-arrested with no additional judicial determination of probable cause under Rule 544. The prosecutor simply refiles identical charges and those defendants are immediately taken into custody to await a new preliminary arraignment on refiled charges that are identical to charges that have just been dismissed by a judge.5 Dist. Court Op. at 4.

III. The Fourth Amendment Prohibits These Re-Arrests.

The Fourth Amendment attempts to guard against unreasonable restrictions on liberty by requiring that an arrest be supported by probable cause, and that, where possible, a neutral magistrate determine if probable cause exists.6 Thus, in Katz v. United States, in referring to the threshold showing needed for a search under the Fourth Amendment the Court stated, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-- subject only to a few specifically established and well-delineated exceptions." 389 U.S. 347, 357 (1967). More than half a century ago, the Supreme Court declared, "[t]o provide the necessary security against unreasonable intrusions upon the private lives of individuals, the framers of the Fourth Amendment required adherence to judicial processes wherever possible." Trupiano v. United States, 334 U.S. 699, 705 (1948) (emphasis added), overruled on other grounds by United States v. Rabinowitz, 339 U.S. 56 (1950).

_____

5. It is not clear how the District Attorney decides who will be immediately re-arrested in this manner, and who will not be.

6. The Fourteenth Amendment extends the Fourth Amendment's guarantee against unreasonable search or seizure to the states. See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

In Gerstein v. Pugh, 420 U.S. 103 (1975) the Supreme Court addressed the inherent tension between protecting an individual's liberty on the one hand, and the real world necessities of law enforcement on the other. The Court concluded that the Fourth Amendment resolves that tension by allowing a warrantless arrest under certain, limited circumstances. The resulting compromise achieves the necessary balance between law enforcement and individual liberty because "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest." Gerstein, 420 U.S. 103, 114.

The defendants in Gerstein were arrested pursuant to a prosecutor's information. Under applicable Florida rules and statutes, prosecutors could charge noncapital offenses by information without a preliminary hearing or leave of court. State courts had previously held that the prosecutor's filing of an information "foreclosed the suspect's right to a preliminary hearing. State courts had also held that habeas corpus was only available to challenge the probable cause for detention pursuant to an information under "exceptional circumstances." Id. at 106. "As a result, a person charged by information could be detained for a substantial period solely on the decision of the prosecutor." Id. On appeal, the Supreme Court framed the issue as follows: "whether a person arrested and held for trial under a prosecutor's information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty." Id. at 104. Stated another way, the issue was, "whether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention. . . ." Id. at 111.

The Court began its analysis of that question by discussing the aforementioned practical limitations that arise from the practicalities of law enforcement. The Court observed:

> Maximum protection of individual rights could be assured by requiring a magistrate's view of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap

23

for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant.

420 U.S. at 113. However, the relaxation of the warrant requirement is tightly tethered to circumstances that are sufficiently compelling to justify relaxing the protection endemic in review by a neutral magistrate. When such exceptional circumstances exist, "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest." Id.

The necessity of allowing a police officer to react as circumstances unfold "on-the-scene" does not, however, minimize the importance of a suspect's liberty, nor permanently degrade his/her entitlement to having a judicial officer review the resulting arrest to determine if it was, in fact, reasonable. "Once the suspect is in custody, . . .[ ] the reasons justifying dispensing with the magistrate's neutral judgment evaporate. . . . And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly." Id. at 114.

The situation here is, of course, a bit different than the situation in Gerstein. Stewart actually received a probable cause hearing before a neutral magistrate. However, therein lies the proverbial "rub." As set forth above, that neutral magistrate determined that there was no probable cause to justify Stewart's continued restraint. Yet, despite this judicial determination, and perhaps to spite it, Stewart was immediately re-arrested under Rule 544 based solely upon the prosecutor's certification and filing. Therefore, although Stewart's initial arrest may well have been occasioned by an officer's on-the-scene observations or averments in a complaint, the circumstances after the arrest are not so extraordinary as to allow the prosecutor's assessment of probable cause to justify re-arrest if a neutral magistrate determines that there is no probable cause to support that re-arrest.

24

Stewart's case illustrates the constitutional infirmities of the District Attorney's policy. As noted above, the victim of the charged assault testified at Stewart's preliminary hearing, and the Commonwealth offered no other evidence to support the charged felony. After hearing that witness testify, the Municipal Court Judge ruled that Stewart could only be held for court on misdemeanor assault, and dismissed the felony of aggravated assault. Inasmuch as judges are not permitted to make credibility determinations at the preliminary hearing stage, it is clear that the Municipal Court Judge hearing the victim's testimony concluded that the testimony was insufficient as a matter of law to sustain a conviction for aggravated assault even if the testimony were true. See Commonwealth v. McBride, 595 A.2d 589 (Pa. 1991). Yet, even though a judge ruled that the testimony of the victim was not sufficient to hold Stewart on the charge of felonious aggravated assault, Stewart was immediately re-arrested for that very charge, and jailed for at least two more weeks. Stewart was re-arrested (apparently before he could leave the courtroom), and thereafter jailed because he could not post bail a second time.

Nothing on this record establishes any "exigency" to justify that re-arrest. Although my colleagues postulate that the prosecutor's decision to re-arrest was based upon information gleaned from some sort of secret "database," it is clear that nothing on this record rises to the level of practical necessity that allows law enforcement officers to act upon on-the-scene judgments they are required to make while patrolling public streets. This is especially true when one considers that a judge has heard all of the evidence the prosecution had to offer and concluded that the Commonwealth could not legally detain Stewart on felony charges. See Gerstein, supra.

I am, of course, aware that Stewart's detention under Rule 544 was substantially shorter than that which troubled the Supreme Court in Gerstein. I also realize that the second preliminary hearing must be held promptly after re-arrest under Rule 544. See County of Riverside v McClaughlin, 500 U.S. 44 (1991). The majority relies upon the 48 hour limit incorporated into Rule 544 to uphold the

25

District Attorney's argument that she is free to re-arrest based only upon the prosecutor's assessment of probable cause provided that defendants receive a prompt judicial determination of probable cause as required by Gerstein and County of Riverside. See Maj. Op. at 11-12.

The majority concludes that the determination of probable cause made by the "issuing authority" at the preliminary arraignment provides the legal basis for the re-arrest after the preliminary hearing. My colleagues thus accept the District Attorney's distinction between the standard at the preliminary arraignment and the standard at the preliminary hearing. The majority agrees that dismissal at the preliminary hearing is based on a failure to meet a different, and substantially higher threshold, than that established at a preliminary arraignment. See Maj. Op. at 12 ("The Pennsylvania law requiring probable cause for arrests and a preliminary arraignment within 48 hours satisfies all that the Fourth Amendment requires, and there is no reason to believe that law was not fully complied with here.") (citing Commonwealth v. Abdul-Salaam , 678 A.2d 342, 347-48, n.10 (Pa. 1996)). A close examination of the nature of preliminary hearings and preliminary arraignments illustrates the weakness of my colleagues' analysis.

As noted above, Pa. R. Crim. P. 540 establishes certain procedures that an issuing authority must follow at the preliminary arraignment following a warrantless arrest. It includes a requirement that the issuing authority determine if there is probable cause for the arrest. If probable cause is found, the issuing authority must inform the defendant of the charges filed against him/her, appoint counsel and otherwise explain the right to counsel, set bail (assuming the defendant was arrested for a bailable offense), and inform the defendant of "the right to have a preliminary hearing." Pa. R. Crim. P. 540(d). The Rule also provides that "[u]nless the preliminary hearing is waived by a defendant who is represented by counsel," the issuing authority must set a date for a preliminary hearing "which shall not be less than 3 nor more than 10 days after the preliminary arraignment." Id.

26

The preliminary arraignment is often held before a defendant is represented by counsel, and the Rule provides the procedure for appointing counsel in such a case, and setting a date for a preliminary hearing (unless a defendant who is represented by counsel waives it). It is therefore clear from the context of the Rule that the preliminary arraignment is designed to inform the defendant of his/her rights, and provide a mechanism for setting bail, and appointing counsel. The Pennsylvania Superior Court has made this quite clear in the context of Pa. R. Crim. P. 516. In addressing the role of the preliminary arraignment following an arrest pursuant to a warrant under Rule 516, the Pennsylvania Supreme Court has stated:

> Rule 516 (formerly Rule 123) of the Pennsylvania Rules of Criminal Procedure requires that a person who is arrested be brought before a judicial officer for preliminary arraignment without unnecessary delay. The purpose of this requirement is to protect an accused's right to know the nature and cause of the accusation against him, his right to counsel, and his right to reasonable bail.[7]

Commonwealth v. Perez, 760 A.2d 873, 875 (Pa. Super. 2000) (citing Commonwealth v. Duncan, 514 Pa. 395, 403, 525 A.2d 1177, 1181 (1987)) (emphasis added). If the Commonwealth is unable to establish a prima facie case at the preliminary arraignment, the defendant must be discharged. See Pa. R. Crim. P. 542(D).

Rule 516 (formally Rule 123) was enacted in 1995 in response to the Supreme Court's decision in County of Riverside. There, the Court required a probable cause determination "as soon as is reasonably feasible, but in no

_____

7. Rule 516 requires that a defendant who is arrested with a warrant must be afforded a preliminary arraignment "without delay." Pa. R. Crim. P. 516 (emphasis added). Rule 540 then establishes the requirements for all preliminary arraignments.

It can be argued that Rule 516 does not focus on probable cause because it only applies when a defendant has been arrested pursuant to a warrant. Therefore, the neutral magistrate that issued the warrant has already determined probable cause to arrest. However, as I discuss below, Pennsylvania courts have not made that distinction.

27

event later than 48 hours after arrest." See Commonwealth
v. Abdul-Salaam, 678 A.2d 342 (Pa. 1996) (applying
Riverside probable cause determination requirements to
Pennsylvania criminal procedure).

The probable cause determination that is the focus of our
inquiry is, of course, made during a preliminary hearing.
The Pennsylvania Supreme Court has explained the
function and importance of the preliminary hearing under
the Pennsylvania Rules of Criminal Procedure:

> The basic principles of law with respect to the purpose
> of a preliminary hearing are well established. The
> preliminary hearing is not a trial. The principal function
> of a preliminary hearing is to protect an individual's
> right against an unlawful arrest and detention. At this
> hearing the Commonwealth bears the burden of
> establishing at least a prima facie case that a crime has
> been committed and that the accused is probably the
> one who committed it. It is not necessary for the
> Commonwealth to establish at this stage the accused's
> guilt beyond a reasonable doubt. In order to meet its
> burden at the preliminary hearing, the Commonwealth
> is required to present evidence with regard to each of
> the material elements of the charge and to establish
> sufficient probable cause to warrant the belief that the
> accused committed the offense.

Commonwealth v. McBride, 595 A.2d 589, 591 (Pa. 1991)
(emphasis added) (citations omitted); see also
Commonwealth v. Hetherington, 331 A.2d 205, 208 (Pa.
1975). Thus, under Pennsylvania law, the preliminary
hearing is intended to insure that the government can
establish sufficient facts to justify further detention. The
"probable cause determination" at the preliminary
arraignment is merely intended to insure that
circumstances justify holding the defendant for the 3 to 10
days it will take for the Commonwealth to present evidence
of its prima facie case at the probable cause determination
that occurs at the preliminary hearing. My colleagues state
the following in discussing the distinction between the
preliminary hearing, and preliminary arraignment:

> it is not at all clear to us that the "probable cause"
> standard and the "prima facie case" standard under

28

Pennsylvania law require the Commonwealth to provide the same level of assurance that the subject has committed a crime. The different terms chosen to describe the Commonwealth's burden at the time of arrest and preliminary arraignment and its burden at the time of the preliminary hearings, suggest to us that prima facie case standard was intended to require different and greater assurance of guilt. "Probable cause," of course, speaks in terms of a probability while "prima facie case" has been defined by the Pennsylvania Supreme Court as evidence "such that if presented at the trial in court, and accepted as true, the judge would be warranted in letting the trial go to the jury."

Maj. Op. at 13. Although the majority concludes that the distinction between probable cause and prima facie case "is not at all clear" under the controlling law; Pennsylvania courts have stated that it is clear to them that no distinction exists. As noted above, the evidence that the Commonwealth presents at the preliminary hearing must be "accepted as true," see Commonwealth v McBride, 595 A.2d 589 (Pa. 1991), just as the evidence at the preliminary arraignment must be.

Moreover, the Pennsylvania Superior Court has said:

[I]t is clear that the concept of establishing a prima facie case is inextricably tied to a showing of probable cause. That is, for the Commonwealth to establish a prima facie case they need to show probable cause that the accused committed the offense. Therefore, a finding by the magistrate that the Commonwealth did not establish probable cause that the appellant committed the violations for which he was charged is the same as a finding that the Commonwealth did not establish a prima facie case. Thus contrary to appellant's assertion, there is no legal distinction to the choice of phraseology that the magistrate may have employed in dismissing the charges against him.

Commonwealth v. Sebek, 716 A.2d 1266, 1269 (Pa. Super. 1998) (emphasis added). As noted above, in Philadelphia County, the determination at the preliminary hearing is

29

made by a Municipal Court Judge. The determination at the preliminary arraignment is made by a Bail Commissioner. It is the Municipal Court Judge presiding at the preliminary hearing whom Pennsylvania law charges with ensuring that the government is justified in depriving the suspect of his/her liberty. In McBride, the Pennsylvania Supreme Court expressed no difficulty in concluding that: "the sole function [of the judge at a preliminary hearing] is to determine whether probable cause exists to require an accused to stand trial on the charges. . . ." 595 A.2d at 592. In Gerstein, the Court noted that "the sole issue" at the probable cause hearing required by the Fourth Amendment "is whether there is probable cause for detaining the arrested person pending further proceedings. . . . The standard is the same as that for arrest. That standard -- probable cause to believe the suspect has committed a crime. . . ." 420 U.S. at 120. Here, that determination was made at the preliminary hearing by the Municipal Court judge.

The majority bases its conclusion that probable cause is distinct from the prima facie case in Pennsylvania on Commonwealth v. Cartegena, 393 A.2d 350, 355 (Pa. 1978) (plurality opinion) (finding probable cause existed for the institution of criminal proceedings, though a prima facie case had not been established); Commonwealth v. Days, 718 A.2d 797, 800 (Pa. Super. 1998) ("[p]robable cause is based on a finding of probability, not a prima facie showing of criminal activity"); and Commonwealth v. Scott, 420 A.2d 717, 720 (Pa. Super. 1980) ("It would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of prima facie case when there had not even been a hint of harassment or failure to show probable cause."). See Maj. Op. at 14.

In Commonwealth v. Cartagena, the Pennsylvania Supreme Court did state that: "[t]he Pennsylvania courts have recognized that the standard of probable cause and the prima facie case standard are conceptually distinct." However, the district court carefully considered Cartagena, and was not persuaded. The district court's analysis of Cartagena is worth repeating here because it fully and accurately disposes of the District Attorney's reliance on

that case. The district court relied upon McBride in stating the following:

> While the District Attorney was unable to articulate any practical distinction between the terms probable cause and prima facie case, she directs us to Commonwealth v. Cartagena, 393 A.2d 350, 355 (1978), in support of her position. While Cartagena seems to say that prima facie case and probable cause are different concepts under Pennsylvania law, it does not define them or explain the difference. Cartagena was decided over fifteen years before the institution of the present two-level system whereby a bail commissioner not learned in the law makes a probable cause determination and a Municipal Court judge thereafter makes a prima facie case determination. McBride, which was decided in 1991, has been construed by the Pennsylvania Superior Court to mean that the probable cause and prima facie case determinations are the same.

Stewart v. Abraham, 2000 WL 1022958 *7 (E.D. Pa. 2000) (citations omitted). I agree. Moreover, it is important to note that, in Cartagena, unlike here, the District Attorney did not simply refile identical charges and seek to re-arrest a defendant without judicial intervention after a judge ruled that the prosecution did not establish probable cause for the initial charges. Instead:

> Appellant was arrested on May 31, 1975. A preliminary hearing was held in the Municipal Court of Philadelphia on June 5, 1975. The court took the matter under advisement and after hearing argument, found that a Prima facie case had not been established. The court ordered appellant discharged on June 13, 1975.
>
> The Commonwealth then drew up another more detailed criminal complaint and another arrest warrant. These documents were presented to a judge of the Court of Common Pleas of Philadelphia who signed the documents on June 16, 1975. Appellant was re-arrested, and following a preliminary hearing before another judge of the Court of Common Pleas of Philadelphia, appellant was held for trial . . . .

31

393 A.2d at 354. Accordingly, the District Attorney in Cartagena did not substitute his own determination for that of a neutral magistrate as the prosecutor seeks to do here. Moreover, in reaching the decision in Cartagena the Court stated, "[w]hen the magistrate believes that probable cause to hold the defendant has not been proven, he may discharge him; . . . If the Commonwealth deems itself aggrieved by his decision it may bring the matter again before any other officer empowered to hold preliminary hearings." Id. Thus, Cartagena assumes judicial approval for a second arrest following discharge at a preliminary hearing.

The majority's reliance upon a pronouncement of the Pennsylvania Superior Court in Commonwealth v. Scott, is also unconvincing. There, the court did state: "[i]t would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of prima facie case when there had not even been a hint of harassment or failure to show probable cause." 420 A.2d at 720. Indeed, the issue in Scott was the assessment of costs under then applicable Pa. R. Crim. P. 542(d). The Rule allowed costs to be taxed against the government if it did not establish a prima facie case "at the first preliminary hearing." Id. at 719. It also gave judges the discretion to discharge a defendant if, despite the prior discharge, "further proceedings on the same cause [were brought] without payment" Id. The decision does not establish a distinction between a prima facie case and probable cause, nor does it infer any such distinction. Moreover, it is interesting to note that even there, in 1980, the court used "probable cause" and "prima facie case" interchangeably as though the distinction my colleagues seek to draw did not exist. Id at 720. For example the court noted,

> [i]t is especially unlikely that the intent of the Rule as revised was to require the payment of the cost . . . prior to any second prosecution because re-arrest and a second preliminary hearing is the only route open to the Commonwealth to test an issuing authority's judgment that a prima facie case has not been made out. It would be unreasonable to require payment of costs every time the Commonwealth wanted to

32

> challenge a finding of lack of a prima facie case when
> there had not even been a hint of harassment or failure
> to show probable cause.

420 A.2d at 720.

I am also not persuaded by the majority's citation to
Commonwealth v. Days. There, the defendant was arrested
following execution of a search warrant. The search
conducted pursuant to that warrant revealed numerous
vials of cocaine on her person and in her apartment, and
she was convicted for possession of a controlled substance
with intent to deliver. On appeal, she challenged the trial
court's conclusion that probable cause existed for the
search. In affirming the trial court's ruling, the
Pennsylvania Superior Court did state: "[p]robable cause is
based on a finding of probability, not a prima facie showing
of criminal activity," 718 A.2d at 1800, as my colleagues
note. However, the court then stated: "[t]he duty of this
Court is to ensure that the magistrate had a substantial
basis for concluding that probable cause existed." Id. Here,
of course, the magistrate concluded that probable cause did
not exist, and I fail to see how Days supports the
proposition that the prosecutor is licensed to ignore that
ruling.8

Essentially then, we are asked to decide if the Fourth
Amendment will tolerate a situation where an individual
can be detained solely upon the certification of a prosecutor
even though a judicial officer has determined that the
prosecutor lacks probable cause for the defendant's
continued detention. That question answers itself. I do not
think that any system of ordered liberty based upon respect
for a judiciary charged with interpreting neutral legal
principles can condone the practice that the District

_____

8. I realize that the Commonwealth is limited to admissible evidence at
the preliminary hearing, whereas hearsay may be considered at the
preliminary arraignment, and the majority's assertion that this creates a
significant distinction between the prima facie  case and the probable
cause determination is not without force. However, given the strength of
the authorities that suggest a contrary result, I can not agree that this
distinction is so significant as to support the distinction the majority
seeks to draw between those two proceedings.

Attorney urges upon us under its application of Rule 544 and which my colleagues have sanctioned.

My colleagues believe that Stewart is asking us "to bar the state from exercising its right to arrest when it believes in good faith that it has probable cause." See Maj. Op. at 16. I agree that nothing on this record suggests that Stewart's re-arrest was the result of bad faith. However, the constitutional analysis here does not turn on the good faith of the prosecutor. The issue is more fundamental than that. Even if such re-arrests always result solely from good faith beliefs of the prosecutor in the courtroom, the constitutional equation would still not balance in favor of allowing the prosecutor's judgment to negate the actions of a judicial officer who has just ruled that there is not a sufficient basis to deprive the defendant of his/her liberty on felony charges.

> [A] prosecutor's responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate. . . . Probable Cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution.

Gerstein, 420 U.S. at 117-8.

Moreover, the Supreme Court has already rejected the argument that a defendant's liberty interest can be held captive to the discretion of prosecutors in this manner. In Gerstein, the Court stated: "[a]lthough a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment." 420 U.S. at 117.

It can hardly be otherwise. Anyone experienced in the emotions of criminal trials will realize what real world practicalities suggest. The prosecutor's motivations in causing a re-arrest under Rule 544 may often, at least in part, result from a sincerely held belief that the defendant "beat the case" or "got over" on the prosecutor. Such feelings may often be based upon little more than the emotions that are inherent in the adversarial process, and/or the prosecutor's obviously biased conclusions about the strength of his/her case. A system that conditions an

34

individual's liberty on those motivations can hardly offer the protection that the Fourth Amendment requires; no matter how well-intentioned the prosecutor may be.

> Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication.

Id. at 118 (citing McNabb v. United States, 318 U.S. 332 (1943)). That is why we have neutral magistrates, that is why the Supreme Court restricted the prosecution's authority to detain absent review of a neutral magistrate, and that is why the district court enjoined the policy that has been implemented under Rule 544 in Philadelphia County.

The requirement that a neutral magistrate evaluate probable cause amounts to precious little if it can be nullified by the prosecutor's certification that probable cause exists, especially when the certification is made immediately after a judge has ruled to the contrary. A prosecutor's "official oath [can] not furnish probable cause. . . ." Gerstein, 420 U.S. at 117. The prosecutor is in substantially the same position as a law enforcement officer who believes his/her view of the case to be correct, and his/her cause to be righteous. More than half a century ago, the Court stated

> [t]he point of the Fourth Amendment, which is often not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

35

Johnson v. United States, 333 U.S. 10, 13-14 (1948).9

If a defendant can not initially be detained "solely on the decision of a prosecutor," it would stand the Constitution on its head to allow the prosecutor that power after a judge has ruled that the prosecutor lacks probable cause to detain the defendant, and orders felony charges discharged. Gerstein, 420 U.S. at 106. The fact that a non-law trained Bail Commissioner may have previously held the defendant for court at a time when the defendant may not have been represented by counsel does not change the equation.

In Gerstein the Court determined that the practicalities that justified an initial warrantless arrest could not justify continued detention without a judicial determination of probable cause. Here, the Commonwealth asserts that practicalities justify continued detention for a brief period to allow it to establish the probable cause that it believes exists. However, the focus on practicality of prosecution and the brevity of the detention misses the point. It requires us to minimize both the importance of one's liberty, and the proper role of the judge in determining the reasonableness of an arrest.

The detention that results in these cases may well be brief when compared to the more lengthy pretrial detentions in Gerstein. However, we ought not to devalue one's liberty to the extent of condoning even a brief period of incarceration following a warrantless arrest unless a neutral magistrate concludes that the prosecution has established probable cause. No informed officer of the court can seriously regard this procedural protection as a troublesome legal technicality, and I doubt that any prosecutor who is truly operating in good faith would regard it as such. "The history of liberty has largely been

_____

9. We have previously noted that the competitive atmosphere of litigation will sometimes give rise to mixed motives on the part of an advocate (there, it was the prosecutor) attempting to admit evidence in a criminal trial. In United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992) we stated, "Although the government will hardly admit it, the reasons proffered to admit prior bad act evidence . . . is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character."

36

the history of observance of procedural safeguards and the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law." McNabb v. U.S., 318 U.S.332, 347 (1943).

Moreover, the brevity of the incarceration that follows re-arrest does not weigh nearly as heavily in the balance under these circumstances as the majority concludes. The Supreme Court has noted that circumstances may make a delay constitutionally unreasonable even if a probable cause hearing occurs within 48 hours of an arrest. While establishing the 48 hour rule for probable cause determinations in County of Riverside, the Court cautioned:

> This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably.

500 U.S. at 56.10 The Court then provided examples of such unreasonable delay. It proclaimed: "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, . . . ." Id. That is precisely what we have here. Therefore, I believe the majority places far too much reliance on the fact that the preliminary arraignments occur within 48 hours of arrest. See Maj. Op. at 12. ("The Pennsylvania law requiring probable cause for arrests and a preliminary arraignment within 48 hours satisfies all that the Fourth Amendment requires, . . .").11

_____

10. In a different context, the Supreme Court has declared, "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice [under a Strickland analysis of competency of counsel]. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 121 S.Ct. 696, 700 (2001). (Emphasis added).

11. The majority states that Stewart's arrest would have violated the Fourth Amendment if it had been made without probable cause, but concludes that "Stewart has not attempted to show. . . that the district attorney lacked probable cause at the time of his arrest or anyone

37

IV. Conclusion

For the reasons outlined above, I must respectfully disagree with the majority opinion insofar as my colleagues conclude that the district court erred in enjoining the District Attorney's current policy under Rule 544.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

else's." The majority notes that "the record does not reveal . . . what information was presented to the neutral magistrate at Stewart's second preliminary arraignment and was found to constitute probable cause." See Maj. Op. at 12, n. 4.

The record does, however, show that a judge ruled that the Commonwealth did not have probable cause to detain Stewart on the felony charges he was arrested for immediately after the judge made that ruling. Therefore, I believe that the majority's focus on the second preliminary arraignment is misplaced. The arrest had already occurred, and there is no dispute that a judge had already ruled that the Commonwealth had not presented the Municipal Court Judge (the relevant "neutral magistrate") with probable cause to support that arrest.

38